CHARLOTTE E. WILLEY *vs.* BOSTON ELECTRIC LIGHT COMPANY.

Suffolk. January 22, 1897. — February 26, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Loss of Life — Employers' Liability Act — Due Care — Law and Fact — Action — Evidence — Negligence — Conscious Suffering — Pleading.*

The insulation of an electric wire was burned off by lightning near a certain pole, and early in the evening A., a night lineman, was sent out. He found the pole where the electricity was escaping, went back again to the station, and had the electricity turned off from the circuit. He then returned, and by pushing the handle of a cut-out box on the pole made it impossible for the electricity to reach that pole. He then went back again to the station, and the electricity was turned on to the circuit, lighting all the lamps except the one upon the pole in question. About an hour and a half later, B., a night patrolman in the employ of the corporation, not knowing that there had been trouble, climbed up the pole, turned on the electricity by means of the cut-out box, as it was his duty to do when the trimmers had left it turned off, and received a shock which caused his death. *Held,* in an action therefor against the corporation, under the employers' liability act, St. 1887, c. 270, that the question whether he was in the exercise of due care was for the jury. *Held, also,* that evidence that, an hour

or two after the accident to B., another of the defendant's men cut the wires running into the cut-out box and joined them above the box, and in that way cut the electricity off from the pole, was admissible to show what A. might have done; there being evidence that, if cutting the wires was the proper thing for the defendant to do, it was A.'s business to do it.

The words "defect in the condition of the . . . machinery" in the employers' liability act, St. 1887, c. 270, do not refer to its working capacity, but to its condition with regard to the safety of the employees; and if such a defect may be remedied by a temporary device so as to remove the danger to the employees, a failure to adopt such means may be negligence on the part of the employer which will support an action under the statute.

In an action under the employers' liability act, St. 1887, c. 270, for causing the death of an employee who died from a concussion of the brain, although there is evidence of a few scattered words having been uttered by him, the jury will be warranted in finding that he never regained consciousness so far as to suffer.

If the declaration in an action under the employers' liability act, St. 1887, c. 270, for causing a death by a defect in the condition of the defendant's works and machinery, points out correctly the general character of the defect, the precise nature of which is peculiarly within the defendant's knowledge, this is enough, and if it describes the defect further in a particular manner, the words may be stretched to cover the case, or they may be stricken out and leave the declaration good.

TORT, under the employers' liability act, St. 1887, c. 270, for causing the death of the plaintiff's husband, Stephen L. Willey, while in the defendant's employ. At the trial in the Superior Court, before *Blodgett*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*C. A. Snow*, (*E. W. Burdett* with him,) for the defendant.

*W. N. Osgood*, for the plaintiff.

HOLMES, J.   This is an action under St. 1887, c. 270, §§ 1, 2, for causing the death of the plaintiff's husband by a defect in the condition of the defendant's works and machinery. The story, so far as material, is short. The insulation of the defendant's wire was burned off by lightning, near the pole where the accident happened. At ten minutes past seven it was discovered that there was trouble, and one Murphy, a night lineman, was sent out. He found the pole where the electricity was escaping, went back to the station, and had the electricity shut off from the circuit. He then returned, and, by pushing the handle of a cut-off box on the pole, made it impossible for the electricity to reach that pole. He then went back to the station and the electricity was turned on to the circuit, lighting

all the lamps except the one upon the pole in question. At about a quarter before nine, the plaintiff's husband, a night patrolman, not knowing that there had been trouble, climbed up the pole, turned on the electricity by means of the cut-out box, as it was his duty to do when the trimmers had left it turned off, and received a shock which caused him to fall to the ground, and in that way killed him. The main question is whether there was a case for the jury.

It may be assumed that it would have been impossible to discover and to remedy the damage to the insulation that night. All that was known was that for some reason the electricity was escaping at that pole. But it was proved, subject to the defendant's exception, that an hour or two later another of the defendant's men cut the wires running into the cut-out box and joined them above the box, and in that way cut the electricity off from this pole, and it was argued that, in view of the probability of unwarned patrolmen doing just what the deceased did, this course should have been adopted by Murphy. We are of opinion that the evidence was admissible to show what was possible for Murphy, and that the argument was proper for the consideration of the jury.

For the defendant, it was urged that the defect was the burnt insulation, and that this could not have been remedied before the accident. But this is narrowing the words of the statute to an impracticable precision. The words are "defect in the condition of the . . . machinery," not "defect in the machinery." As the presiding judge very properly ruled, they do not refer to its working capacity, but to its condition with regard to the safety of the employees. So, when the statute goes on to speak of the defect not having been remedied, it does not mean that the machine must have been made perfect for working purposes, but that its dangerous condition must have been ended. This may be done by a temporary device, as well as by permanent repairs. It was not necessary that the break in the insulation should have been discovered and mended, if, as was shown to be the fact, the danger could have been removed by easy and obvious means, either those adopted or by a warning signal.

There was evidence that, if cutting the wires was the proper thing for the defendant to do, it was Murphy's business to do

it.   He was employed to find trouble where there was any, and to remedy it if he could.    That is to say, he was, or might have been found to be, " intrusted with the duty of seeing that the works and machinery were in proper condition," so far as this accident was concerned.

As to the care shown by the deceased, the jury may have found that he received the shock too soon after the danger became manifest to avoid it by throwing the current off again.    It was for the jury to say too, whether, under the circumstances as they appeared to him, he ought to have protected himself more than they were warranted in finding that he did.

The deceased died from a concussion of the brain.    There was testimony of a few scattered words having been uttered by him, but the jury were warranted in finding that he never regained consciousness so far as to suffer.

If there was any question of variance between the pleading and the proof, the case being one where the precise nature of the defect would be peculiarly within the defendant's knowledge, it would have been monstrous to allow the trial to go for nothing on that account.    There was no surprise, unless to the plaintiff, and an amendment would have been allowed, or would be allowed now, as of course, if necessary.    The declaration pointed out the general character of the defect correctly, as a defect in the condition of the electric lighting apparatus upon the pole which has been mentioned.    That was enough.    The declaration described it further as a defective crane, and its negligent connection with said light and said pole.    The words can be stretched to cover the case, or they could be stricken out, and leave the declaration good.

*Exceptions overruled.*