SARAH CHISHOLM *vs.* NEW ENGLAND TELEPHONE AND
TELEGRAPH COMPANY.

Suffolk.    March 9, 12, 1900. — May 17, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Master and Servant — Employers' Liability Act —
Assumption of Obvious Risk.*

At the trial of an action under St. 1887, c. 270, § 1, cl. 2, for injuries sustained by
a lineman in the employ of the defendant by contact with an electric wire of a
third person at a point where, by the chafing of the wire against a tree, the in-
sulation had been worn off and the tree charred, it appeared that the defective
insulation and the charred spot on the tree were concealed by foliage and were
unknown to the defendant or his foreman under whose orders the lineman was
working, and it was doubtful whether the indications of danger could not have
been more easily seen by the lineman than by the foreman, if they could have
been seen by the foreman at all.    *Held,* that the action could not be maintained.

TORT, under St. 1887, c. 270, for damages for the death of
the plaintiff's husband, caused by the alleged negligence of the
defendant.    Trial in the Superior Court, before *Gaskill,* J.,
who allowed a bill of exceptions, in substance as follows.

The deceased was a lineman in the defendant's employ, and,
under the direction of the defendant's foreman one Eachern,
who had sole charge of the work, was engaged in suspending a
cable of the defendant from a taut wire strung between poles
by which it was supported.    By the order of the foreman the
deceased and a fellow workman, one Cameron, had prepared
and suspended from the taut wire a boatswain's chair in which
the deceased was seated, and which, as he fastened the cable,
was drawn along the wire by his fellow workman.    The two
men were left to do the work themselves under the charge of
the foreman, who stood near Cameron on the ground.    After
the deceased had fastened the cable for three or four hundred
feet from the place where he was set to work, he came to a tree
by contact with which the insulation of a highly charged wire
belonging to another company and suspended upon the same
poles had been worn off.    In undertaking to pass this tree his

foot touched the wire at the point of defective insulation and he was instantly killed by the shock. The tree had previously been burned by the electricity, but the marks of burning and the defective condition of the wire were concealed by twigs and foliage. At the time of the accident there was a standing order of the defendant that its linemen should examine poles before ascending them.

Cameron, called as a witness by the plaintiff, testified as follows: " Q. Was it possible to see this bare spot on that tree? Could you see that bare spot on that tree, standing on the ground, under which Chisholm got hurt? A. Well, if I was interested in doing the work myself, I could see it; anybody could. — Q. Could the bare spot on the wire have been seen by Chisholm as he was sitting doing his work in the boatswain's chair? A. No, sir. — Q. Will you tell us why you could not see it? A. Because I was too far above it. It was way down, and I attended to something different from my feet. — Q. If you looked? A. I was looking in my own direction, and I was n't looking toward my feet. I could n't without making a special of it. — Q. Will you describe to the jury what the condition of that tree was around this burned spot which you spoke about? A. It was an old scraggly tree. — Q. Was there anything else on the tree beside the bark around the spot that was burned? A. You can generally tell. — Q. Talk about this particular tree. Was there anything about this spot? A. There was nothing but a young growth growing right over the place where the injury was. — Q. These little shoots that grew out about the injury — would that have anything to do in obstructing the view of a person sitting in the chair the same as Chisholm was? A. Certainly — the foliage. These little twigs interfered. If you wanted to see you could n't see."

There was also evidence that the foreman went up the pole where the deceased was killed to take down his body, and received a severe shock himself. At the close of the evidence for the plaintiff, the judge, at the request of the defendant, directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*J. W. Corcoran & W. B. Sullivan*, for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

HOLMES, C. J. This is an action brought under St. 1887, c. 270, to recover for the death of the plaintiff's husband. The deceased was a lineman in the defendant's employ, and was engaged in suspending a cable of the defendant from a taut wire, when his feet came in contact with an exposed and highly charged wire of another company which had its wires upon the same poles, and he was killed by the shock. The action is based upon the alleged negligence of the person exercising superintendence.

The deceased was in a boatswain's chair suspended from the taut wire, and a fellow workman drew him along as he fastened the cable. These two were left to do the work themselves, under the charge of a foreman who was standing near the man on the ground. They had worked along from three to four hundred feet from the place at which they were set to work, when they came to a tree; and the accident was due to the insulation of the wire above mentioned having been worn off by contact with the tree. The tree had been burned by the electricity, but the deceased was not likely to see the marks when engaged upon his work, and we assume that the evidence might have been taken to mean that he could not have seen them if he had looked. We assume also that the foreman could have seen them from some points on the ground, although a fair interpretation of the evidence leaves it doubtful whether the marks were more visible from the ground than from the boatswain's chair. Twigs and foliage had grown from the tree in such a way as to hide them. There was no evidence that the foreman actually knew of the defect or of the marks which might have given warning of it. The judge before whom the case was tried directed a verdict for the defendant, and the plaintiff excepted.

We are of opinion that the direction was right. It was a standing order of the defendant's that linemen should examine poles before ascending them. The danger from an imperfectly insulated wire is the most characteristic risk which a lineman has to encounter. That general risk the deceased assumed by entering upon his employment. Everybody knows that there always is a chance that the insulation of a wire may become worn off or defective from some cause, and that in a circuit of

miles there is more than a chance that such an event will happen somewhere. *Junior* v. *Missouri Electric Light & Power Co.* 127 Mo. 79.

There was nothing in the circumstances of this case to shift the risk. The wire did not belong to the defendant, and its dangerous condition was not due to the defendant's negligence, as in *Murphy* v. *City Coal Co.* 172 Mass. 324. The deceased was not sent without warning to a place in the defendant's control, which was known by it to be dangerous, and which could and should have been made safe or warned against, as in *Willey* v. *Boston Electric Light Co.* 168 Mass. 40. The foreman's order had no special reference to the place of the accident. It was merely a general order to do the work of suspending the cable, given when the work began, between three and four hundred feet away from where the deceased was killed.

There is no evidence that the foreman knew of the danger either when he gave the order or later. Indeed it is plain that he did not know it, as he went up the pole where the deceased was killed and received a severe shock himself. He did not purport to be guarding the deceased from danger, and his mere presence in the neighborhood did not impose upon him the duty to do so. We may add, although it is not necessary, that if the evidence is taken at all strictly it does not appear that the foreman could have seen the indications on the tree from any place where he was, but merely that there was a place on the ground to which the foreman might have gone and from which the indications might have been detected, a most inadequate reason for holding the defendant.

*Exceptions overruled.*