WALLACE C. WOODWARD *vs.* CITY OF TAUNTON.

Bristol.    March 22, 1909. — June 22, 1909.*

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* In use of electricity.

At the trial of an action against a city operating an electric light plant, by an employee of a telephone company who was injured because of a current of electricity communicated from a wire of the defendant, which transmitted electricity at high voltage for commercial purposes to a wire of his employer upon which in the course of his duties the plaintiff was working, it appeared that the wire upon which the plaintiff was working was called a "messenger" wire and was one from which was suspended a cable of his employer, that the commercial wire of the defendant was put up after the messenger wire without proper insulation and, by reason of the defendant's negligence, was strung across and above and too close to the messenger wire, so that in a wind there was contact between the two, that the plaintiff had been sent to lower the messenger wire, thus placing it farther from the defendant's wire, that he was not an inexperienced man in such work and had been employed at it for over a year, that in the course of his work at the time of the accident he stepped upon the copper roof of a building and then grasped the messenger wire, and received a shock which caused him to fall from the roof. It also appeared that, while the plaintiff was working on the messenger wire, he used a small fall and tackle. *Held,* that, for the injury to the plaintiff to have occurred, the wires must have come into contact, that he must have known of such a possibility and the risk attending it, and that, for

───────────

* The opinion in this case was withdrawn on an application for a rehearing. This was denied on September 7, 1909, when the opinion was returned to the Reporter.

him to have acted as he did when he must have known of such a possibility constituted negligence which contributed to cause the injury and barred his recovery.

TORT for personal injuries received by the plaintiff, an employee of the Massachusetts Telephone and Telegraph Company at Taunton, alleged to have been caused by a current of electricity communicated to wires of his employer, upon which he was working, by reason of the negligent manner in which wires of an electric lighting plant owned by the defendant were put up. Writ in the Superior Court for the county of Bristol dated May 16, 1907.

The case was tried before *Raymond*, J. The facts are stated in the opinion. At the close of the evidence introduced by the plaintiff, the presiding judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

*C. R. Cummings*, for the plaintiff.

*H. F. Hathaway*, for the defendant.

LORING, J. This case is before us on an exception to an order directing a verdict for the defendant on the plaintiff's evidence.

The plaintiff was an employee of a telephone company. He was sent to lower a messenger wire supporting a telephone cable which ran across Broadway to the City Hotel in Taunton. At that time the poles of the defendant were set in the sidewalk on the opposite side of the street from the City Hotel and on these poles was strung among others an electric light wire belonging to and maintained by the defendant. This electric light wire was a wire of high voltage used for commercial purposes. The telephone wire was set up before the electric light wire was strung. The electric light wire was strung across and above the telephone wire.

The plaintiff's story is that he had driven a new bolt into the building to which his company's telephone wire was attached, about a foot lower than the old bolt to which that wire was then attached. He then proceeded to remove the telephone wire from the old bolt in order to attach it to the new one. Just what the plaintiff then did is not very clearly stated in the bill of exceptions. As we understand it, he twisted a piece of wire some three feet long around the messenger wire, " to lengthen it " ;

and we assume that the other end of this wire was to be attached to the new bolt. It was so used by the man who straightened out the wires after the accident to the plaintiff. Next the plaintiff proceeded to detach the messenger wire from the old bolt. For this purpose he fastened to "something on the roof" the hook at one end of what is called in the bill of exceptions his "comealongs," by which we assume is meant a small fall and tackle. He then went out on to a bay window top covered with copper, and while in the act of attaching the other end of the fall and tackle to the messenger wire back of the loose wire, he got a shock which knocked him off the bay window top and he fell to the street.

One McCray who went up to the place where the plaintiff was when the accident happened, testified that when he got there he found this messenger wire and the defendant city's electric light wire in contact. He also testified that he was on the roof at "about half past seven." The plaintiff's testimony was that he began his work at seven. This witness found the three-foot piece of wire, one end of which the plaintiff twisted around the messenger wire, hanging loose. He fastened that to the new toe bolt, "threw off the comealongs," and then "cut the messenger wire," by which we understand that he cut the fastening by which the messenger wire was attached to the old bolt. The wire did not then fall, but "was held in a crease in the brick wall"; he loosened it with a stick and the job was done. He also testified "that while the messenger wire was held in the crease of the brick wall it was still in contact with the defendant's electric light wire."

The plaintiff's testimony was that when he was on the roof the two wires were four or five inches apart, and "that the wires were moving a little" at that time; "that there was a little wind that morning, — a slight breeze"; that "he had not pulled on the comealong before he was hurt"; that he was "positive that he did not pull the messenger wire up there and that he didn't put any strain on the comealong."

The plaintiff also put in the testimony of three witnesses who had seen the two wires flickering and sparking the night before the accident and once or twice in the week before the accident.

In addition he put an expert on the stand who testified that there would be no shock or sparking unless the wires were in contact, and if they were four or five inches apart there would be no danger. That the insulation of the defendant's electric light wire was not " what we call insulation at all ; . . . that the [defendant's] construction was a slack job because the wire came so close to the wire that passes under it ; . . . that it would take a pretty strong breeze to move the wires up and down ; that if an ordinary summer wind struck them their movement would depend upon how they were struck by the wind, but the wind would be more apt to move them sideways than up and down and the natural swing would be sidewise and not up and down unless the pole was disturbed ; that in order to get the up and down movement one of the poles must move." The plaintiff's fellow employee mentioned above testified that the day in question " was a very clear morning with scarcely any wind ; a beautiful, sunlight, warm morning."

Lastly it appeared that the plaintiff had been in the defendant's employ for three years. During the first eight months he was a night operator, did inside work and went out " as a ground man who sends things up to the man on the pole." Then for a year he did outside work ; and finally, in April, 1905, he began climbing poles and from then on to August 7, 1906, the date of the accident, " he did all of the lineman's work " ; " he was known as a combination man and that is a man who puts [in] inside work and does outside construction." Although at times in his examination the plaintiff undertook to minimize his knowledge, taking it as a whole he must be taken to have been an experienced workman.

McCray testified that he found in the insulation of the under part of the defendant's electric light wire a hole the size of the defendant's messenger wire.

The jury could have found that the defendant was negligent in the insulation of its electric light wire and in the stringing of it. It strung the light wire so near the telephone wire which had been previously put up, that the defendant's light wire had sagged down on to the telephone wire or had been blown on to it by the wind ; and the insulation was poor. *Illingsworth* v. *Boston Electric Light Co.* 161 Mass. 583.

But the whole situation was apparent to the plaintiff who was not an inexperienced man. How the accident happened is not clear. It may be that the two wires were closer together than the plaintiff thought they were, and came together by their swaying. It may be that he pulled on the comealongs and by accident shoved the messenger wire into the crease in the brick wall where it was found after the accident, when the two were found to be in contact; or he may have shoved it into the crease by some other means. The accident must have happened because the wires were in contact when the plaintiff went on the roof on the morning in question, or because they were then so near to each other (even if he said they were four or five inches apart) that their swaying caused by the moving of the pole or otherwise brought them into contact, or because the plaintiff (without knowing it) brought them into contact. In whichever of these ways the accident happened, the jury were not warranted in finding that the defendant's negligence was the sole cause of it. The plaintiff was sent out as an experienced man, on a dangerous piece of work. He must be taken to have known that from the fact that the two wires were so close together that one had to be lowered. As we have said, the two wires must have been brought together by him or have been so near each other that they came in contact without any action on his part. It is of no consequence which was the fact. In either event for an experienced man to grasp the wire under those circumstances, while standing on a copper roof, is as matter of law an act of negligence.

The case at bar differs from *Illingsworth* v. *Boston Electric Light Co.* 161 Mass. 583, *Barker* v. *Boston Electric Light Co.* 178 Mass. 503, *Linton* v. *Weymouth Light & Power Co.* 188 Mass. 276, and *Mahan* v. *Newton & Boston Street Railway,* 189 Mass. 1, because the plaintiff in the case at bar was sent out to remedy the very thing which caused the accident.

The entry must be

*Exceptions overruled.*