[Civ. No. 2558. Third Appellate District.—February 14, 1923.]

CHARLES A. PEZZALIA, Respondent, v. SAN JOAQUIN LIGHT AND POWER CORPORATION et al., Appellants.

[1] NEGLIGENCE—EVIDENCE—WHEN QUESTION OF FACT.—Negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence.

[2] ID.—INJURIES TO ELECTRIC LINEMAN—CONTACT OF WIRES—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.—In this action for personal injuries received by an electric lineman while engaged in placing new brackets on a telephone pole from the coming in contact, by reason of the swaying of the pole, of the telephone wire with a high voltage wire of a power company at a time when he had hold of the telephone wire, the question whether plaintiff, who had had fifteen years' experience and who had knowledge of the maintenance of the two wires in close proximity, was guilty of negligence was a question of fact for the jury.

APPEAL from a judgment of the Superior Court of Merced County. Stanley Murray, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Lindsay & Conley for Appellants.

Ford & Johnson for Respondent.

BURNETT, J.—In an action for damages a jury awarded the plaintiff the sum of ten thousand dollars and from the judgment entered thereon the appeal has been taken. The nature of the action may be shown by the following allegations of the complaint:

"That on or about the 3d day of May, 1918, defendants owned, controlled, maintained and operated a certain high voltage electric power line, in the said county of Merced, situated on the east side of a certain county highway in said county which highway extends from the towns of Los Banos to Newman in said county. . . . That the defendants at all times herein mentioned transmitted and conducted electric current over and through said power line and said wires carried and conducted more than 600 volts of electricity.

"That on or about the 3d day of May, 1918, The Pacific Telephone and Telegraph Company, owned, operated and maintained a certain telephone pole line along the west side of said highway. . . . That said telephone pole line at all times herein mentioned carried and conducted less than 600 volts of electricity. That at a point on said highway about two and one-half miles in a northerly direction from the said town of Los Banos, and in the county of Merced, and as a part of said telephone pole line, the said The Pacific Telephone and Telegraph Company maintained a certain pole known as no. 61/12. That connected with said pole and running thence in an easterly direction there was at all times herein mentioned a certain single telephone wire. That said single telephone wire forms a part of a telephone system connected with a certain farm house in the vicinity of said pole no. 61/12. That in leading from said pole to said farm house said single telephone wire passes under the said high voltage electric power line of the defendants herein before referred to and said power line passes over said single telephone wire. . . . That said single telephone wire and said telephone pole line were erected and operated prior to

the erection and operation and maintenance of said high voltage electric power line.

"That on or about the 3d day of May, 1918, the plaintiff was employed by the said The Pacific Telephone and Telegraph Company as an electric lineman . . . and while in the course of his employment, plaintiff was required to climb to the top of said telephone pole no. 61/12. That when plaintiff was near the top of said pole and while at a height from the ground of about 25 feet, and while he was working on a wire forming a part of said telephone pole line and had said wire in his hands, the top of said pole was caused to sway slightly. That thereupon and without any carelessness and negligence of plaintiff the said single telephone wire was caused by said slight sway to come in contact with said high voltage electric power line.

"That immediately upon said contact, approximately 11,000 volts of electricity were transmitted through said single telephone wire to said pole no. 61/12 and into said wire being held in the hands of plaintiff, and into plaintiff's body."

Then follows an allegation and a description of the serious injury caused to plaintiff, and the particular negligence of defendants is specified as consisting "in constructing, operating and maintaining said power line in such close proximity to said single telephone wire" and thereby causing "a high voltage of electricity" to be "transmitted to the body of plaintiff as aforesaid" and inflicting "upon him the injuries hereinbefore enumerated."

Appellants introduced no evidence at the trial, resting their case upon the showing made by respondent, and their only contention is that "the evidence shows conclusively that the respondent was guilty of contributory negligence as a matter of law," and that the trial court should have granted their motion for a nonsuit based upon that ground.

[1] Of course, there is no dispute as to the principle of law that applies to such situation. In *Fernandes* v. *Sacramento City Ry. Co.*, 52 Cal. 45, it is stated as follows: "But when there is no controversy as to the facts, and from these it clearly appears what course a person of ordinary prudence would pursue under the circumstances, the question of negligence is purely one of law. In such case there is no function for the jury to perform in respect to the question

of negligence. But there is a large class of cases in which, though all the facts are admitted, a question arises whether the act imputed to a party as negligence was such as persons of ordinary prudence would have performed under the circumstances, and the court is unable to determine that question from the nature of the act itself and the other undisputed facts. In such cases it should be submitted to the jury whether the act in question was such as ordinary prudence dictated or the contrary."

It is unnecessary to multiply authorities on this question, but we may call attention to the emphasis placed by the supreme court in *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651], and *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237 [116 Pac. 513], upon the solicitude that should be exercised by the courts to refrain from any unwarranted invasion of the province of the jury to pass upon disputed questions of fact or to determine between conflicting rational inferences.

In the former it is said: "The rule is, that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence. . . . If one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man that he had not exercised such care, it must be left to the jury. (*McKune* v. *Santa Clara Valley Mill etc. Co.*, 110 Cal. 480 [42 Pac. 980].) Our ideas as to what would be proper care vary according to temperament, knowledge, and experience. A party should not be held to the peculiar notions of the judge as to what would be ordinary care. That only can be regarded as a standard or rule which would be recognized or enforced by all learned and conscientious judges, or could be formulated into a rule. In the nature of things no such common standard can be reached in cases of negligence, where reasonable men can reach opposite conclusions upon the facts." And hence it was declared that, in such instances, the question should be submitted to the jury.

In the Zibbell case the court declared: "It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence that the court can say, as a matter of law, that contributory

negligence is established. Even when the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.''

[2] With this well-established principle, as thus enunciated, in view, must we say that plaintiff's conduct was such that no other reasonable inference can be drawn than that imputing to him such want of ordinary care as to deprive him of any right to recover, no matter how gross was the negligence of appellants contributing to the injury?

By his own testimony must he be judged, as no other evidence presents him in any more favorable light. He testified he had been an electric lineman for·about fifteen years prior to the accident; his work that day required the placing of two new brackets, one on each side of the pole, and the transferring of the iron circuit on the middle bracket down to the new bracket and putting a copper circuit on said middle bracket; before going up the pole he observed the high tension wire of appellants and said telephone wire to be quite close together, ''about eighteen inches, two feet, something like that it looked from the ground''; he knew that the line on the east side of the road was a high-power line and that contact between those two lines was likely to cause injury; he consulted with the other two members of his crew and it was agreed that if he would go up there carefully he could do the work required; he started up the pole and when he arrived at the point where the brackets were to be nailed on, in his own language: ''I done just the same as I always did, I put my safety around the pole and nailed the bracket, and then moved to step up a little higher to lower my iron wires, I had to unbuckle my safety to do that and I got up a little higher and while I was doing it I put my hand up on this drop wire and about that time the pole swayed and that was the last of me.''

He further testified that he put his hand on top of the bracket; that, after he had nailed the bracket, one step farther was required to go higher on the other circuit and, as quick as he moved, the pole moved ''a little bit,'' about six inches. ''Q. Was there any way, Mr. Pezzalia, that you, in that position that you were in, could have then prevented the pole moving? A. I don't know how. Q. Well, was there any way? A. There was not, unless you would have the

guys, four guys, and that ain't practicable. Q. And were you moving on the pole after you had taken this one step as carefully as it was possible for you to do? A. Yes, sir." It appears further that he had tools in his belt with which to remove the wires, and in response to questions as to his conduct in putting his hand on the bracket he replied: "Well, it is customary to get hold of anything that is on a pole when you are moving and working on it. I could have taken hold of the board or the other bracket but I didn't know that this one bracket was going to give me this shock, it just happened that it came from that. I put it on the bracket to hold myself going up, steadying myself."

It is apparent that in many cases it is difficult, if not impossible, for the trial or a reviewing court to determine whether "sensible and impartial" men might disagree as to whether plaintiff exercised due care. In the last analysis it is plain that the attempt to apply the rule prescribed by the law results in the expression of the opinion of the court as to whether the party acted as a sensible and prudent man ought and might be expected to act. The case may be so clear and palpable that the opinion against the plaintiff may be declared with assurance of general acquiescence on the part of intelligent and informed persons. But if there appears to the court any element of uncertainty as to whether a rational exculpatory inference may be drawn, the court then should not substitute its judgment or opinion for that of a jury. In applying the test to the peculiar accident the court may in some instances, no doubt, be guided wholly by its own knowledge and judgment of human nature and rational conduct but, generally speaking, the court will be aided by the opinion of those having had experience in the particular line of work. Herein it is the claim of appellants that the court should of its own knowledge say that the conduct of respondent as revealed by the evidence is so incompatible with reasonable caution and prudence as to deprive him of the right to complain of the admitted negligence of appellants.

On the other hand, the contention is that the bare facts are not such as to coerce the judgment and conscience of the judge against the plaintiff, but the case falls within that debatable zone wherein other circumstances, including the

opinions of other persons, may be accorded some significance. Respondent says:

"In this case four experienced linemen, after due consideration of the problem confronting Pezzalia, came to the conclusion that the work could be safely done. The fact that it was subsequently safely done is a justification of this opinion. [This refers to the subsequent restoration by one of the employees of the line on said pole.] Here the undisputed evidence shows that Pezzalia was doing the work as carefully as he could. He had partially accomplished his purpose, when the pole gave an unusual, as distinguished from the anticipated sway, causing the accident.

"This is not a case where a man forgot dangers. The evidence shows that Pezzalia knew and appreciated the possible danger at all times, and was endeavoring to avoid it. It is not a case where the injured man went heedlessly into danger. He acted upon the combined experience of men engaged in this particular line of work, when he carefully undertook to do it under the unjustifiable belief that it was safe."

Of course, it is no answer to say that he was engaged in a hazardous and dangerous piece of work. The occupation of a lineman is necessarily dangerous, and he is only required to exercise that degree of caution which should be expected of ordinarily prudent men occupied with that kind of endeavor. If we may attach any importance to the opinion of those experienced in such matters we may not lay aside the view of those who were participating with him. It is true that the danger was increased by the act of appellants in placing their wires so close to the telephone wire, but it should be a clear case of recklessness and indifference to consequences on the part of plaintiff that would permit appellants to maintain that, by reason of their own negligence, he should have abandoned his business rather than subject himself to the increased peril. At any rate, we feel sure that it cannot be said, as a matter of law, that plaintiff's conduct in ascending the pole in pursuance of his duty as a lineman, manifested such imprudence and want of caution as to make the consequences of his injury necessarily imputable to his own negligence.

The only feature in the case, as we view it, that injects any doubt into the question is the act of plaintiff in placing

his hand upon said wire or bracket at the time he took the last step. But it must be remembered that the wire was then perfectly harmless and the contact would have resulted in no injury if it had not been for the unusual swaying of the pole, which brought the wires together. We think he was not bound at his peril to anticipate such contingency and it is fairly debatable whether, under the circumstances, said act was excusable.

We may say that the jurors were fully and accurately instructed as to every feature of the case, and especially as to the doctrine of contributory negligence, and some consideration should be paid to their opinion, as expressed in their verdict, of the care exercised by plaintiff, as well as to that of the trial judge, manifested in the denial of the motion for nonsuit, unless the reviewing court is compelled by its own judgment to say that, in reason, only a decision opposed to plaintiff can be reached.

Many interesting cases are cited by appellants, which they claim point the way to a reversal herein, but most of them are easily distinguishable in their facts and can therefore afford little aid, but we may notice specifically those that are more nearly analogous.

In *Woodward* v. *City of Taunton*, 203 Mass. 63 [89 N. E. 114], as stated by appellants, an experienced lineman was injured while engaged in the performance of his duties by reason of a contact of an electric light wire with the telephone wire upon which he was working. The plaintiff was sent out to lower a messenger wire because it was too close to an electric light wire of high voltage. The plaintiff testified "that the wires were moving a little at the time" and that the wires were very close to each other. He touched the telephone wire while he was standing on a copper roof, a thing which he knew to be dangerous. Defendant's motion for a nonsuit was granted and the judgment was affirmed by the supreme judicial court of Massachusetts. It was not clear just how the accident happened, but the court declared: "As we have said the two wires must have been brought together by him [the plaintiff] or been so near each other that they came in contact without any action on his part. It is of no consequence which was the fact. In either event for an experienced man to grasp the wire under those

circumstances, while standing on a copper roof, is as a matter of law an act of negligence.''

It may be observed, however, that the wires were so close together, being only four or five inches apart, that several times they were seen to be ''flickering and sparking,'' and the danger was so great and menacing that the conduct of plaintiff could be properly characterized as destitute of ordinary care. Herein the wires were from eighteen inches to two feet apart and there was ground for the opinion that the work might be done without injury.

Another Massachusetts case is *Chisholm* v. *New England Tel. & Tel. Co.*, 176 Mass. 125 [57 N. E. 383]. Therein a lineman met his death by contact with an electric wire of a third person at a point where, by the chafing of the wire against a tree, the insulation had been worn off. The relation of master and servant existed between the plaintiff and the defendant, and the court, after noting that the deceased had violated a standing order of the defendant that linemen should examine poles before ascending them, said: ''The danger from an imperfectly insulated wire is the most characteristic risk which a lineman has to encounter. That general risk the deceased assumed by entering upon his employment.'' It was also impliedly, if not directly, held that the defendant was not guilty of negligence.

In *Columbus R. Co.* v. *Dorsey*, 119 Ga. 363 [46 S. E. 635], a lineman was killed upon ascending a pole in the discharge of his duty by coming into contact with a heavily charged wire belonging to a third person, from which wire the insulation had worn off near the pole. It was held that the danger was so obvious that it was the duty of the deceased to avoid it, and that he should have taken a safe way to pass, or, if none was available, he should have declined to proceed rather than to incur such peril.

In *Dwight Mfg. Co.* v. *Word*, 200 Ala. 221 [75 South. 979], the cause was reversed for errors in rulings upon the pleadings and in giving certain instructions. The plaintiff, who was an expert lineman, ascended the tree, where the accident occurred for the purpose of wrapping a telephone wire with tape to prevent its contact with a limb. In doing this he pushed his shoulder against defendant's wire and was severely injured. The tree was from ten to fifteen feet from the power and telephone pole, from which the

wires of both companies ran into and through the branches of the tree, about fifteen feet above ground. Plaintiff had known for five years of the presence of the power wires on the street, had seen the poles, and knew the wires carried high voltage. He testified that he did not know that they were in the tree or so close to the telephone wires and that he went about his work without looking for or thinking about the power wires, which he never saw at all at the time of his injury. The supreme court did not hold that the plaintiff was necessarily chargeable with contributory negligence but only that he could not excuse himself for his ignorance of the danger, if he failed to exercise ordinary care to discover and avoid the danger and the injury.

In *Ergo* v. *Merced Falls Gas & Electric Co.,* 161 Cal. 334 [41 L. R. A. (N. S.) 79, 119 Pac. 101], the decisive factor was the forgetfulness of the danger on the part of the plaintiff and the court followed the rule of the authorities that "it is negligence for one to remember and avoid a known danger in one moment and forget it the next when nothing has happened to confuse or distract him, or cause such forgetfulness except his own failure to exercise his memory." Therein the employee of the defendant was working in close proximity to wires carrying a hugh current of electricity, which he knew to be dangerous and to be avoided, and he came in contact with such wires as the result of his own forgetfulness, there appearing to be no reasonable excuse for his forgetfulness.

In *Andrews* v. *Valley Ice Co.,* 167 Cal. 11 [138 Pac. 699], plaintiff's testate was an employee of the defendant, Valley Ice Co. He was working on the construction of a building near wires heavily charged with electricity and he brought his ruler in contact with one of these wires and was killed by the resultant shock. It is quite apparent that the conduct of the decedent was inexcusable, but it is worthy of note that the supreme court, although stating that the case fell under the rule that "one who places himself in the way of an obvious and well-understood peril is guilty of contributory negligence" and that "temporary forgetfulness or a reckless curiosity hurried him to an untimely death," also based the decision upon the ground that deceased "was acting outside the scope of his employment and against the order of his master."

Of all the cases cited respondent thinks that *Teachout* v. *Grand Rapids, G. H. & M. Ry. Co.*, 179 Mich. 388 [146 N. W. 241], is the most nearly in point. Therein, however, there was no eye-witness to testify, the lineman having been killed. The supreme court of Michigan, though, held that whether such lineman "was negligent in coming in contact with certain high tension electric wires, strung not more than eighteen inches above the telephone wires, while he was repairing the latter" was a question for the jury, the presumption being that he was in the exercise of ordinary care. Therein was reiterated the rule declared in 15 Cyc. 475, and other authorities to the effect that to give rise to the defense of contributory negligence in an action for injury done by electricity "it must be shown that plaintiff, in coming in contact with the appliances, voluntarily and unnecessarily exposed himself to danger, and if reasonable men might honestly differ on the question, the court will not hold plaintiff guilty of contributory negligence as a matter of law."

As we view the record and understand the principles of law that must be applied to the facts we do not feel warranted in holding that the plaintiff was so clearly negligent as to require the case to be withdrawn from the jury.

The judgment is therefore affirmed.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 12, 1923.

All the Justices concurred.