Ronald A. BARRETT, Plaintiff, Appellee,

v.

FOSTER GRANT CO., Inc., Defendant and Third-Party Plaintiff, Appellant,

v.

TRANSFORMER SERVICE, INC., Third-Party Defendant, Appellee.

No. 71–1115.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1971.

Decided Nov. 5, 1971.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

1. See NLRB v. Amalgamated Clothing Workers of America, 5 Cir. 1970, 430 F.2d 966.

Martin L. Gross, Concord, N. H., with whom Sulloway, Hollis, Godfrey & Soden, Concord, N. H., was on brief for Foster Grant Co., Inc.

Paul J. Liacos, Peabody, Mass., with whom Liacos & Liacos, Peabody, Mass., was on brief, for Ronald A. Barrett.

W. Wright Danenbarger, Manchester, N. H., with whom Paul E. Nourie and Wiggin, Nourie, Sundeen, Pingree & Bigg, Manchester, N. H., were on brief, for Transformer Service, Inc.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

In 1951 Foster Grant Co., a Delaware corporation having its principal place of business in Leominster, Massachusetts, hereinafter defendant, acquired, in situ, certain transformers from the Massachusetts Electric Company. Without alterations, it used these transformers to reduce a transmission voltage of 13,800 volts, the "high" side, to 550 volts, the "low" side, for its manufacturing operations. The transformers were oil cooled, and it was necessary, periodically, to change or recondition the oil. For three years after it acquired the transformers, defendant relied on Massachusetts Electric Company to perform this service. The method employed by that company required that the electricity be cut off, resulting in a plant shut-down for several hours. In 1954, Transformer Service,

Inc., a New Hampshire corporation, hereinafter Service, approached defendant, asserting it had developed a new technique whereby it could recondition the oil without the necessity of shutting down. The representations it made to induce defendant to accept its services included broad statements as to the competency and special training of its employees, and its ability safely to carry out its undertaking.

Defendant did accept, and thereafter, until February 5, 1968, Service periodically piped the oil by making hose connections to the transformers, reconditioned it with its equipment, and returned it to the transformers while they remained in operation. On that day plaintiff Barrett, an employee of Service and a resident of New Hampshire, while connecting a hose, came in contact with a bare lead wire on the high side of the transformer and as a consequence received severe burns, necessitating numerous operations and ultimately the amputation of his right forearm. This diversity action followed in the New Hampshire district court. Defendant summoned in Service as a third-party defendant. The court, sitting without jury, found for the plaintiff against the defendant, and assessed damages in the sum of $260,826. In the third-party action, it found for the third-party defendant. 321 F.Supp. 784. In that case it made a ruling of law which a subsequent New Hampshire decision in another case, between different parties, rejected. See Wentworth Hotel, Inc. v. F. A. Gray, Inc., N.H., 1970, 272 A.2d 583. On rehearing the court held the third-party defendant not liable even under this other principle. Defendant appeals in both actions.

A preliminary question, asserted by the defendant to be basic, is whether, as the district court held, New Hampshire substantive law applies with respect to defendant's liability or, as defendant contends, the New Hampshire conflict of law rule would be to look to the law of Massachusetts, the place of the occurrence. Defendant says that it fully sat-

isfied the duty owed an employee of an independent contractor under Massachusetts law; secondly, that under Massachusetts law plaintiff would have assumed the risk of loss and would have been contributorily negligent, and, finally, that by Massachusetts law plaintiff would have been a "common employee" of defendant and limited to his Workmen's Compensation recovery.

We will eliminate separate consideration of assumption of the risk. This rule is simply the converse of the Massachusetts rule, discussed post, that a property owner owes to an employee only a duty to warn of hidden dangers. *See* Keough v. E. M. Loew's, 1939, 303 Mass. 364, 365, 21 N.E.2d 971. With respect to the Massachusetts common-employment doctrine in workmen's compensation, its possible application to plaintiff seems, at best, debatable. *Cf.* Abbott v. Link-Belt Co., 1949, 324 Mass. 673, 88 N.E.2d 551. But even if such a defense might have been made out, the district court, noting that defendant did not seek to raise it for well over a year, during which plaintiff, had he known defendant would rely on it, might have pursued a claim against defendant's carrier, found prejudice, and refused to permit amendment of the answer on the ground of laches. While amendments must be freely allowed, *see* Foman v. Davis, 1962, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222, we cannot quite say this was beyond the court's discretion.

Turning to the issue of common law negligence, the undisputed facts show that in 1954 defendant abandoned its prior, irrefutably safe, method of changing the oil on the representation of Service that it had a safe way of doing it, with qualified men, who did not need to shut off the current. Service said nothing about a need of making alterations in the equipment. Although the district court spoke of plaintiff's "extensive experience," in point of fact he had had relatively little. Service's own witness, called by plaintiff, described him as a "plumber." Even as a plumber he had been given no special training, and no instruction except a general warning of the danger of high voltage and to "stay away from the high [voltage] side, *if possible.*" (Emphasis supplied.) In disregard of these instructions, it being clear that it was possible to service the transformer entirely from the low side, plaintiff, in attaching the hose to the plug went to the high side, and by some movement came in contact with the high wire. The court found that it was "easier" to work from the high side. It then concluded that defendant, in leaving the plug on the high side, and the high wires uninsulated, was negligent in not anticipating that a workman would disregard instructions and take the easier way.

In addition to conspicuous signs, "Danger—High Voltage," it was apparent to plaintiff that the plug was on the high side, and that the high wires were uninsulated. He acknowledged he saw them at the time, and knew that he had to be "very careful." On these facts there could be no liability under the law of Massachusetts. A Massachusetts landowner normally owes to the employee of an independent contractor only the same duty he owes his own employees—to warn of hidden dangers, assuming he knows or should know of them. He does not owe a general duty of care, except to refrain from active negligence. *See* Gobern v. Metals & Control, Inc., 1 Cir., 1969, 418 F.2d 290; Burr v. Massachusetts Elec. Co., 356 Mass. 141, 248 N.E.2d 492.

Plaintiff claims an exception, asserting that the Massachusetts court views electricity as a highly dangerous force which requires of those who employ it a correspondingly higher degree of care. *See* Gelinas v. New England Power Co., 1971 Mass.Adv.Sh. 429, 268 N.E.2d 336; Rasmussen v. Fitchburg Gas & Elec. Light Co., 1962, 343 Mass. 515, 179 N.E.2d 907. In these cases, however, the victim of the accident was, in relation to the defendant, a member of the general public. The court does not extend the exception to an employee of an independent contractor engaged by

the defendant. Burr v. Massachusetts Elec. Co., 356 Mass. 141, 248 N.E.2d 492. If Massachusetts law is applicable, the court's finding of liability on account of the condition of the transformers could not stand.

■■■ The disappearance of the alleged safety man, Lord, supplied by the defendant, as a basis for liability, even under Massachusetts law presents a quite different question. There was no evidence that defendant had a duty to furnish this individual. Patently, an employer whose only duty is to warn of hidden dangers is under no obligation to assign a supervisor to make certain the employee heeds the warning. Cf. Chisholm v. New England Tel. & Tel. Co., 1900, 176 Mass. 125, 57 N.E. 383. Particularly must this be so when an independent contractor persuades a property owner to hire it to work under what it knows to be dangerous conditions; whatever responsibility there may be to supervise belongs to it rather than to the property owner. Under these circumstances the sole possible basis for imposing liability would be that one who voluntarily provides a service may be liable if he induces reliance upon it. A common example is where a railroad maintains a gratuitous crossing signal. See, e. g., Erie R. Co. v. Stewart, 6 Cir., 1930, 40 F.2d 855, cert. denied 282 U.S. 843, 51 S.Ct. 34, 75 L.Ed. 748. See also Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L. Ed. 48. The court found that plaintiff "relied on Lord to warn [him] if [he] came too near the high voltage wires." 321 F.Supp. at 792–793. The difficulty is that plaintiff freely testified not only that he knew that he was very close to the wires, but that he knew that Lord had left, and that he did not rely on him. There can be no answer to this. There is no obligation to continue a gratuitous service, but merely to warn of its discontinuance. Indian Towing Co. v. United States, 350 U.S. at 69, 76 S.Ct. 122; Erie R. Co. v. Stewart, 40 F.2d at 857. The court's finding of negligence in this respect is plainly wrong even un-

der New Hampshire law. See Kuchynski v. Ukryn, 1938, 89 N.H. 400, 200 A. 416; cf. Corson v. Liberty Mut. Ins. Co., 1970, 110 N.H. 210, 265 A.2d 315.

The district court ruled that under the conflicts of law rules of New Hampshire laid down in the landmark case of Clark v. Clark, 1966, 107 N.H. 351, 222 A.2d 205, the substantive law of New Hampshire, rather than of Massachusetts, was to be applied. In Clark the court renounced the "mechanical" principle of applying the law of the locus in all tort cases, and substituted five criteria or "considerations" which it stated were to be given varying weight depending upon the circumstances. Neither Clark nor any subsequent New Hampshire case involves liability based upon the ownership of land, and we can apply the New Hampshire test only by a very considerable examination of its announced principles. This is not, however, our first exposure. See Dindo v. Whitney, 1 Cir., 1970, 429 F.2d 25.

The five considerations listed in Clark, 107 N.H. at 354 to 355, 222 A.2d at 208 to 209, can be briefly summarized.

1. "Predictability of results." The court stated that this "basically relates to consensual transactions, in which it is important that parties be able to know in advance what law will govern a transaction so that they can plan it accordingly. * * * Also, it assures uniformity of decision regardless of forum, thus discouraging 'forum shopping'."

2. "[T]he maintenance of reasonable orderliness and good relationship among the states in our federal system. * * * Any choice of law that would unduly favor one state, the forum perhaps, or interfere with easy movement from state to state, would be questionable. Open disregard of another state's clear interests might have bad effects."

3. "Simplification of the judicial task." Here, though it spoke primarily of procedural rules, the court acknowledged, "It may be easier also for a court to apply its own substantive law than

another state's law, because it understands its own law better and therefore can do a better job of administering justice under it." It added, however, that "simplification of the judicial task is not the whole end of law, and opposing considerations may outweigh it."

4. The concern of a court "with the advancement of its own state's governmental interests [rather] than with those of other states." This it qualified, "Strong policy concerns can underlie local rules, and they sometimes do, but often they do not. In most private litigation the only real governmental interest that the forum has is in the fair and efficient administration of justice."

5. "[T]he court's preference for what it regards as the sounder rule of law, as between the two competing ones * * * when the choice is open to us." By this it meant when one of the rules "is outmoded, an unrepealed remnant of a bygone age, 'a drag on the coat-tails of civilization,'" quoting Freund, Chief Justice Stone and the Conflict of Laws, 59 Harv.L.Rev. 1210, 1216 (1946).

In its actual decision the *Clark* court held, after extensive discussion, that where two New Hampshire residents took a short automobile trip beginning and ending in New Hampshire, but passing through Vermont, where an accident occurred, the New Hampshire rule that a host is liable to his guest for ordinary negligence should be applied rather than the gross negligence standard of the Vermont guest statute. It reached this conclusion through a sensitive weighing of each consideration in light of the nature and supportive policies of the particular Vermont and New Hampshire rules in issue. Applying consideration (1), predictability, it stated that accidents were not planned, and that were the parties to think of liability and liability insurance, both would have thought in general terms of New Hampshire, their local law. As to (2), the court stated that interstate travel and the sensibilities of Vermont would not be affected, "whichever law is applied," so

that this was no affirmative reason for choosing Vermont law. *Cf.* Dindo v. Whitney, 429 F.2d, at 26. With respect to item (3), the court pointed out that simplification of the judicial task was not at issue, because a New Hampshire judge could apply the relaxed Vermont gross negligence rule "with relative ease."

With respect to (4), New Hampshire's governmental interest, the court pointed out that both parties were New Hampshire residents; that the car was maintained under New Hampshire laws, and that the "short trip * * * was both to begin and end here." Since the only reasons the court could conceive for the Vermont statute were "(i) to protect kindly hosts from ungrateful guests * * *, and (2) to protect liability insurance companies from suits brought by guests colluding with their hosts," 107 N.H. at 356, 222 A.2d at 209, the court found that Vermont had no interest in having its rule apply where "the factors that bear on this host-guest relationship all center in New Hampshire." *Id.* New Hampshire, on the other hand, was found in such a case to have a real interest in having its ordinary negligence rule apply. Finally, as to consideration (5), the court pointed out that the special host immunity "contradict[s] the spirit of the times."

In discussing consideration (4) the *Clark* court introduced into its analysis an element only suggested by mere recitation of the considerations, although implicit in items (2) and (4). The court will examine the supportive policies behind the rules of the states that appear to be concerned to determine which state has, considering the purposes of its rule, the strongest interest in having its law applied in the case before it. This element, by seeking to assure that the eventual choice of law promotes the interests of the concerned jurisdictions expressed in their domestic rules insofar as they are relevant in the multistate context, supplements the other considerations which focus on more general multistate policies. To attempt

instead to apply the five criteria without examining the policies of the various domestic rules involved could result in as rigid an approach as the traditional rules produced. *See* A. T. vonMehren & D. Trautman, The Law of Multistate Problems: Cases and Materials on Conflict of Laws 102–05 (1965). We may add that implicit in the nature of these criteria and in the way the New Hampshire court applied them in *Clark* is that the choice of law question must be resolved individually for each substantive issue. *See generally* Babcock v. Jackson, 1963, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 285; Restatement (Second) of Conflict of Laws § 145, Comment *d*, at 417.

■ Because the district court limited its discussion to what it considered to be the New Hampshire interests, only once appraising, or comparing, those of Massachusetts, we will make our own analysis from scratch.

(1). Predictability. Nothing is more fixed than land, and hence, at least initially, the duties resulting from ownership. If the law of the residence of the visitor were to control, a landowner would be obliged to think in terms of the law of fifty states, not to mention foreign countries. Predictability does not point to the place of origin of the visitor. We believe in any broad sense it points directly to where the land from which the duty arose is located. We are not convinced by plaintiff's answer equating the fortuity of the location of an accident during an automobile trip with an injury chargeable to the condition of a piece of real property, where the purpose of the plaintiff's presence at the. locus related directly to the property.

(2). Good relationship among the states. As to the first aspect of this criterion, we can do no better than quote from the *Clark* opinion itself: "Open disregard of another state's clear interests might have bad effects." 107 N.H. at 354, 222 A.2d at 208. A state has a clear interest in determining what obligations should, or should not, result from the ownership of land within its borders. These obligations can affect conduct upon, and maintenance of, the property. Both seem primarily to concern the state in which the property is located, whether the approach is in terms of fairness, or a sophisticated desire to attract industry to the state. The district court's simple conclusion that Massachusetts should not care if additional liability were imposed, "particularly since the plaintiff is a New Hampshire resident," seems both wrong and a non-sequitur. Furthermore, it overlooks the other aspect of consideration (2), avoiding interference with interstate movement. If a Massachusetts landowner, or his insurer, were to think of it—and the possibility of a quarter of a million dollar judgment is not de minimis—a rule requiring him to conform his property to the state law of every foreign resident he hired might be an effective deterrent to employing New Hampshire workers. However indifferent Massachusetts may be thought to be to the imposition of additional liability in favor of a New Hampshire resident, this cannot be said of a Massachusetts landowner contemplating employment of foreign labor.

(3). Simplification of the judicial task. The district court thought it "more comfortable" for a court to apply its local law. Criterion (3), if measured by the court's standard, would simply substitute one mechanical rule for another, since presumably it is always more comfortable to apply one's own law. As previously shown, *Clark* specifically repudiated such an approach. This consideration is not relevant when the foreign law can be applied "with relative ease." 107 N.H. at 356, 222 A.2d 205. Certainly the Massachusetts rule as to duty of care is readily understandable, and easy of application. Plaintiff's only answer is a page in his brief pointing out the difficulties of applying the Massachusetts common-employment doctrine, an argument that might be characterized, in view of the holding that

this defense is barred by laches, as whipping a dead horse.

(4). The forum's "governmental interests." Plaintiff argues that New Hampshire has a "strong legislative policy" at stake in this case in that the New Hampshire legislature has expressed an intention that its workmen's compensation act not bar suits against tortious third parties. This argument misconceives the policy. The legislature was saying that the act was not to benefit third parties, not that it should create liability against them. We might recognize validity in plaintiff's contention were we dealing with workmen's compensation and the common-employment doctrine, but, again, we are not. Plaintiff's further assertion that New Hampshire law should control "because plaintiff was the sole support of five minor children," is not only a jury argument, but an improper one at that. We cannot believe that a rule of conflict of laws is to depend upon the affluence, vel non, of the parties. Rather, we believe that in this case a test of relative governmental interests returns us to what has been said under criterion (2), and favors Massachusetts.

Finally, we cannot find, in considering criterion (5), that the Massachusetts law is so unsound that the New Hampshire court would find itself called upon to reject it. The district court's statement that New Hampshire represents "the majority view" is documented neither by it, nor by the plaintiff. Our own research suggests that the court's extreme position (if it is correct) that New Hampshire law requires not only clear warnings and the availability of another way, but the making of an easier way safe, is not the majority rule. *See* Annot., 35 A.L.R.3d 230, 254–62 (1971). Even of the eleven or so jurisdictions which have purportedly adopted the rule of Restatement (Second) of Torts § 343A (1965) that a landowner may still be liable, though he gave warning of the danger, if he "has reason to expect that the invitee will proceed to encounter the known or obvious danger

because to a reasonable man in his position the advantage would outweigh the apparent risk," *id.*, comment *f*, at 220, most have done so in cases where the victim could not have done business with the defendant at all without encountering the risk, or where it was predictable that plaintiff would be distracted and forget about the danger. *E. g.*, Peterson v. W. T. Rawleigh Co., 1966, 274 Minn. 495, 144 N.W.2d 555; Reboni v. Case Bros., Inc., 1951, 137 Conn. 501, 78 A.2d 887. As has been pointed out, neither situation is the case here. The Restatement itself suggests that a landowner should not be held if the plaintiff chose the hazardous course solely for reasons of convenience. *See* Restatement, ante, §§ 496C and 496E.

But even if it be thought that the New Hampshire court would go further than the Restatement, we do not believe that a court which has never denied to an employer the right to say to his employee, "Here are the dangers, expose yourself to them or not, as you choose, but at your own risk," *see* Butler v. King, 1954, 99 N.H. 150, 106 A.2d 385 (dictum); Papakalos v. Shaka, 1941, 91 N.H. 265, 18 A.2d 377 (dictum); *but cf.* Bolduc v. Crain, 1962, 104 N.H. 163, 181 A.2d 641, would consider that a rule of a sister state extending to its landowners the same privilege with respect to the employee of an independent contractor is "an unrepealed remnant of a bygone age." 107 N.H., at 355, 222 A.2d at 209.

Nor do we think that the district court correctly understood the New Hampshire court's fifth consideration. The court said the New Hampshire substantive rule was to be selected because it was the "better view." If this is what the New Hampshire court meant in speaking in terms of "soundness," that court would automatically apply its own law in any case in which New Hampshire had a connection with the cause of action, since, obviously, in cases of disagreement, the New Hampshire court believes its own law to be better. So broad a ruling would produce three results, all seemingly at conflict with the

balance of the *Clark* approach: the substitution of one mechanical rule for another; the disappearance of predictability and the substitution of the law of the forum and forum shopping, since the courts of other states could be expected to exercise the same freedom of self-assertion; and, finally, substantial departure from the sensitivity towards other states expressed in consideration (2). We believe that in consideration (5) the court meant that it would reject foreign law not simply when it felt its own better, but only when it felt the foreign law affirmatively unsound, *see* Clark v. Clark, 107 N.H. at 355, 222 A.2d 205 ("obsolete or senseless"), and when the general multistate concerns would not be markedly undermined by that decision. *See id.* at 355, 222 A.2d at 209 ("when the choice is open to us"). *See generally* Taylor v. Bullock, 1971, N.H. 279 A. 2d 585; A. T. vonMehren & D. Trautman, ante at 376–78.

In sum, we believe the New Hampshire court would feel, in total consideration, that the law of Massachusetts should govern the extent of the defendant's duty.

This disposition makes it unnecessary to consider the court's finding that the plaintiff's adoption of the "easier" way to approach the plug, in spite of exposing himself to bare wires known to be highly dangerous, was not negligence on his part, and the correctness of its ruling that Service, despite its representations as to the training and special ability of its employees, was not obliged to indemnify defendant for having sent an essentially uninstructed and untrained employee to do the work. *Cf.* Wentworth Hotel, Inc. v. F. A. Gray, Inc., N.H., 1970, 272 A.2d 583. We cannot forbear noting, however, since the district court's opinion is a matter of record, that its conclusion that because plaintiff himself was not contributorily negligent Service fully satisfied its obligation to perform in a workmanlike manner, would be the reverse of our approach. If plaintiff was to be excused, subjectively, because he had not been taught any better how to do the work, by the same token Service's performance of its undertaking would seem conspicuously deficient.

Reversed. Judgment for the defendant. In the third party action appeal dismissed as moot.