Carl I. LATHAM, Jr., Appellee,

v.

CROFTERS, INC., et al., Appellants.

Carl I. LATHAM, Jr., Appellee,

v.

CROFTERS, INC., et al., Appellants.

Nos. 73–1554, 73–1555.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1973.

Decided Feb. 28, 1974.

Thomas E. Palmer, Columbus, Ohio (James C. Aranda, Chicago, Ill., Moritz, McClure & Palmer, Columbus, Ohio, on brief), for appellants.

David A. White, Rock Hill, S. C. (S. Jackson Kimball, Roddey, Sumwalt &

Carpenter, Rock Hill, S. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and TURK,[*] District Judge.

WINTER, Circuit Judge:

Plaintiff sued Sidney D. Griffith, Crofters, Inc. (a corporation of which Griffith was president and chief executive officer), Deegee Company (a partnership of which Griffith was a partner), and others,[1] alleging that plaintiff paid defendants $65,500 to obtain financing for two of plaintiff's building projects but that defendants breached their contract as finders and, indeed, had entered into the contract for fraudulent purposes. The action commenced in the district court on May 7, 1971, and the case was set for trial on February 7, 1973.

On the morning of trial, Griffith, through counsel, sought a continuance on the ground that his health would not permit him to attend. The motion was denied; trial by jury proceeded; and a judgment against all defendants for $223,944.70 resulted.

We think the district court abused its discretion in denying the continuance and in failing to grant a new trial after additional evidence concerning Griffith's non-attendance was adduced. Defendants also complain of errors in the district court's instructions to the jury, but they neither objected nor excepted to the instructions or failure to instruct, and since we do not find any "plain error," we do not reach these questions. We reverse the judgment entered against Griffith, Crofters and Deegee, and award them a new trial.

I.

Application of the rule in this circuit that the granting or denial of a motion for continuance is a matter within the sound discretion of the district judge and that his exercise of that discretion will be disturbed only if it appears that it has been abused [2] presents, primarily, a question of fact. We proceed to the facts:

Griffith was a member of the Ohio bar and intended to conduct his own defense. The district court's local rules required that he associate local counsel. While Griffith was advised of the local rules on October 4, 1971, he did not associate counsel until January 25, 1973. Meanwhile, at a call of the docket conducted on January 25, 1973, at which Griffith was unrepresented, the case was set for trial on February 7, 1973.

On February 7, Griffith's local counsel orally moved for a continuance, stating that Griffith had suffered a very serious heart attack in December, 1968, necessitating his hospitalization and confinement at home for many months and that on December 28, 1972, Griffith had "again suffered a very serious second heart attack and is confined to coronary care at the Riverside Hospital, Columbus, Ohio." A colloquy between counsel and the court followed about why Griffith had not been deposed, during which counsel represented that Griffith had been ordered by his doctor "not to tend

---

[*] Sitting by designation.

1. The other defendants were Gerald A. Donahue and Harry A. Groban, both of whom were co-partners of Deegee Company together with Griffith. While Donahue and Groban appealed from the judgment entered against them, they failed to file briefs as required by Rules 28 and 31, F.R.App.P. Accordingly, we dismiss their appeals, Rule 31.

2. Speers Sand and Clay Works, Inc. v. American Trust Co., 52 F.2d 831 (4 Cir. 1931) and Druckman v. Forsyth Furniture Lines, 22 F.2d 59 (4 Cir. 1927) are cited by defendants. Later cases in this circuit include United States v. Schembari, 484 F.2d 931, 933–934 (4 Cir. 1973); United States v. Inman, 483 F.2d 738 (4 Cir. 1973); United States v. Pigford, 461 F.2d 648 (4 Cir. 1972); United States v. Perchalla, 407 F.2d 821 (4 Cir. 1969). The later cases are criminal cases where, of course, any right to proceed in the absence of a defendant is more questionable than in a civil case, and where there is more chance for a defendant to assert that the denial of a continuance violates a constitutional right than in a civil case. Nonetheless, they set forth the same basic rule of discretion in the district court as is applicable in civil litigation.

to any work until February 12." Counsel presented a letter from Griffith's doctor certifying that Griffith "was confined to the coronary care unit at Riverside Hospital, Columbus, Ohio, on 20 December 1972 until January 13, 1973. I advised him not to return to work, and his next appointment with me is on February 12, 1973." [3]

The district judge offered to permit counsel to proffer Griffith's testimony to see if counsel would stipulate to what he would say if present, but no proffer was made.

The district judge did not summarize his reasons for denying the continuance when he made the ruling; but from the colloquy preceding the ruling, some of those reasons emerge. They included (a) disapproval of Griffith's late employment of local counsel, (b) the admitted failure to present the motion in the form required by a local rule, (c) Griffith's failure to be deposed to preserve his testimony when he had a history of heart disease, and (d) the absence of an explicit certification by Griffith's physician that Griffith was unable to come to court or that it would be dangerous for him to do so.

The motion for new trial, filed on behalf of all defendants, was grounded solely on the district court's denial of the continuance. It was supported by an affidavit of Griffith's physician in which, in accord with the local rule, he certified that from December 28, 1972 until February 19, 1973, Griffith "has been in varying degrees, totally and partially disabled . . . . Griffith was not fit nor able to attend or participate in the trial of any lawsuit . . . [or] to travel . . . to Rock Hill, South Carolina . . . [and] for Sidney D. Griffith to have attended and participated in the trial of the lawsuit . . . would have been and would now be a very serious threat to his life."

## II.

As to Griffith, we think that there was an abuse of discretion in denying the motion for a continuance. Looking at the record as a whole, we think that there was a sufficient showing of substantial danger to Griffith's life or health had he been required to be present at the trial to mandate the grant of a continuance. It is true that the thrust of the local rule was to require a showing that the life or health of a party or a necessary witness would be jeopardized by an appearance in court and that the data presented to the district court, in support of the original motion, did not make this explicit showing. It did show that Griffith had been in a coronary care unit of a hospital until a little more than a month before the trial and that he was not supposed to return to work on the date of the trial. These statements, coupled with the known fact that Griffith lived a considerable distance from court, should have permitted the inference that the purposes of the local rule were satisfied. In any event, that data was sufficient to suggest, at least, the substantial possibility, later confirmed by the affidavit supporting the motion for a new trial, that the requisite danger existed. Under such circumstances, the district court, if it doubted the completeness of the showing, should have afforded Griffith, or his local counsel, the opportunity to substantiate the claim by additional proof. Davis v. Operation Amigo, Inc., 378 F.2d 101, 103 (10 Cir. 1967). Certainly when the facts were established beyond peradventure of doubt, in conjunction with the motion for a new trial, the district court abused its discretion in denying that motion. Having presided at the trial, the district court, then, inescapably was aware of the importance of Griffith's testimony.

---

3. Defendant Donahue also failed to appear at trial. He wrote to local counsel stating that he would not be present "[o]n physician's advice . . . due to severe hypertension, and unstable diabetic condition." His letter added "[t]rust you will successfully represent me."

The other reasons which seemed to have influenced the district court do not require a contrary conclusion. Late employment of local counsel, while a possible source of annoyance, had no relevance to whether the motion should have been granted or denied when the motion was grounded on the intervening illness of a party, rather than local counsel's lack of preparedness to proceed to trial because of his late employment. Griffith's failure to preserve his testimony, *de bene esse*, may have been a censurable omission when viewed by hindsight, but we cannot say that a party who has once had an illness must always record his testimony against the possibility that he may suffer another illness. In short, there was an insufficient basis on which to require that Griffith's case be tried in his absence and under the circumstances where his version of the disputed transactions could not be presented to the triers of the facts.

We do not commend local counsel for failing to proffer what Griffith's testimony would have been. Perhaps the failure to do so at the time of the motion for continuance is explained by local counsel's late employment and the likelihood that they were not certain of the substance of Griffith's testimony. But in the motion for new trial, they alleged only concludingly that "Sidney D. Griffith's testimony was absolutely essential to the defense of this case since in addition to being an individual Defendant, he was the President of the Defendant Company, Crofters, Inc., and one of the three (3) partners of the Defendant partnership, Deegee Company, both of which depended considerably on his legal advice and opinion." Greater specificity should have been supplied, both in fairness to the district court and to serve their clients. Nonetheless, we think that since Griffith individually was a party, the inference that his testimony would be important to his case outweighs a contrary assumption.

### III.

In an appropriate case, we have no doubt that a distinction may be made between the absence or unavailability of a party and the absence or unavailability of a witness. Thus, it may not be an abuse of discretion to deny a continuance because of the unavailability of a witness where it would be an abuse of discretion to deny a continuance because of the unavailability of a party. One can theorize also a case in which the converse is true, as for example, where a defendant is sued on a theory of *respondeat superior,* solely because of tortious conduct of his agent, unknown to the principal, where the agent, in the absence of the defendant, is competent to testify as to the scope of his agency.

We need not get into these fine distinctions, however, with respect to Crofters and Deegee, because we are persuaded that denial of a continuance as to them was an abuse of discretion because of the illness and unavailability of Griffith. Griffith was president of Crofters and a co-partner of Deegee. He was thus a party, as a co-partner of Deegee, and he was the principal natural person through whom Crofters acted. We have examined the testimony with care, and we will not detail it. But it appears that in the various transactions of which plaintiff complained, Griffith played an active part together with Harry A. Groban. Crofters and Deegee acted in substantial measure through Griffith. Of necessity, any defense they might have to plaintiff's claim, especially the imputation of fraud, would have to come largely from Griffith. Together with Griffith, individually, they suffered substantial prejudice in being forced to trial without his presence.

Reversed; new trial granted.