Leo MANZOLI and Mary Ann Manzoli,
Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent,
Appellee.

No. 89–1607.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1990.
Decided May 22, 1990.

Ronald J. McDougald, Boston, Mass., was on brief for petitioners, appellants.

Doris D. Coles, Attorney, Tax Div., Dept. of Justice, with whom Shirley D. Peterson, Asst. Atty. Gen., Washington, D.C., were on brief for respondent, appellee.

Before BREYER, Chief Judge, TORRUELLA and ALDRICH, Circuit Judges.

TORRUELLA, Circuit Judge.

Leo and Mary Ann Manzoli appeal from the Tax Court's decision sustaining tax deficiencies assessed against them by the Commissioner of Internal Revenue ("Commissioner"). The issues are various and will be discussed *seriatim*.

## FACTS

On June 13, 1984, the Grand Jury of the United States District Court for the District of Massachusetts indicted Leo Manzoli and Mary Ann Manzoli for willfully attempting to evade and defeat their federal income tax liabilities for the taxable years of 1977 and 1978 in violation of 26 U.S.C. § 7201. On January 3, 1985, Mr. Manzoli pled guilty to attempted evasion of income tax for the taxable year 1978. Judgment was entered against Mr. Manzoli on January 4, 1985, and fifteen days later the indictment against Mrs. Manzoli was dismissed.

Prior to the years at issue, both Mr. and Mrs. Manzoli had long records of employment, although neither had earned a substantial annual income. They lived frugally, and saved money from earnings, gifts, and other sources. With the money they had saved, on November 17, 1975, the Manzolis purchased land in Lynnfield, Massachusetts, on which they planned to build their residence. For this purpose, they obtained a bank mortgage for $65,000 and Mr. Manzoli took a leave of absence from his insurance business. The excavation began in March 1976, and the house was completed by December of that year.

Meanwhile, Mr. Manzoli entered the massage parlor business doing business as Lion Enterprises Inc. In November 1976, Mr. Manzoli leased part of a building in Peabody, Massachusetts. In early January 1977, the Parisienne Sauna massage parlor opened. The massage parlor sold "sessions" of one half hour, one hour, and one hour and fifteen minutes for $20, $30, and $40, respectively. Customers paid either in cash, check or credit cards. If a tip was charged on a credit card, Mr. Manzoli immediately paid the tip to the masseuse out of the cash receipts. This cash was also used to pay suppliers.[1]

During 1978 the Manzolis participated in various deals that came to the attention of the Commissioner. For example, on February 1, 1978, at the instance of Mr. Manzoli, a brokerage account was opened with E.F. Hutton in the name of James Spinale, Mrs. Manzoli's father. On February 6, 1978, Mrs. Manzoli drew a check for $20,000 on a bank account of Lion Enterprises Inc., payable to herself. She endorsed the check and used the proceeds to purchase three

---

**1.** Mrs. Manzoli, who was a school teacher at the time, was in charge of bookkeeping. The evidence demonstrated that she was neither experienced in accounting methods nor was she actually involved in the day-to-day operations of the business.

cashier's checks, two for $7,500, and one for $5,000, all payable to E.F. Hutton. A month later, Mrs. Manzoli purchased a Mercedes Benz 450 SLC for $28,605. And on June 15, 1978, Mr. Manzoli purchased a Rolls Royce for $48,000. Both automobiles were purchased, registered and insured in the corporation's name and were paid in part or in full with Lion Enterprises' undeposited cash. Mrs. Manzoli's business records did not indicate these withdrawals.

After the indictment, on September 25, 1986, the Commissioner sent a notice of deficiency to petitioners for the taxable years 1977 and 1978, and determined understatements of petitioner's taxable income for 1977 and 1978 of $47,517.63 and $301,315.43, respectively, based on the net worth method of computation. He also determined that all or part of petitioners' underpayment of tax for each year was due to fraud.

The Manzolis filed a petition before the Tax Court, which held that the Manzolis had not shown error in the government's net worth analysis. The Tax Court further found that the government had failed to show fraud but, because of his guilty plea in the prior criminal case, Mr. Manzoli was collaterally estopped in the civil case to deny fraud for 1978.

## STANDARDS OF REVIEW

 The Tax Court's findings of fact, as in the case of the net worth method assessment, are subject to review under the "clearly erroneous" standard. *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Connor v. Commissioner*, 847 F.2d 985, 989 (1st Cir.1988); *In Re Tully*, 818 F.2d 106, 109 (1st Cir.1987). This "standard adheres with undiminished force to inferences which the judge below has drawn from facts of record." *Commissioner v. Duberstein*, 363 U.S. 278, 290, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1959). We note also that "where there are two permissible

views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *In Re Tully*, 818 F.2d at 109 (quoting *Irons v. FBI*, 811 F.2d 681, 684 (1st Cir.1987)).

 When asked to review decisions denying discretionary motions, such as motions for continuance and motions for leave to amend, we will do so only for abuse of discretion. *Abatti v. Commissioner*, 859 F.2d 115 (9th Cir.1988). When reviewing under this standard, we will focus on the reasons given by the court for its conclusions to determine whether the Tax Court's determination was reasonable. *See Zinniel v. Commissioner*, 883 F.2d 1350 (7th Cir.1989).

## DISCUSSION

## I. UNREPORTED INCOME

### A. *Net Worth Method*

 Appellants dispute both the application of the net worth method and the government's net worth figures. Essentially, they allege that the present case falls under the rule established in *Thomas v. Commissioner*, 232 F.2d 520, 523–24 (1st Cir.1956). In that case the Tax Court's findings of fact were found to be in error because its net worth figures were reached arbitrarily and because it required the taxpayers to establish a correct amount.

We disagree with appellants' contentions. First, our determination in *Thomas* rested on the fact that there was no substantial evidence on the record to support the Commissioner's conclusions.[2] That is not the case on the present appeal. In this case the record supports the Tax Court's conclusions. The findings with respect to the taxpayers' net worth are findings of fact, and should not be disturbed unless clearly erroneous. *United States v. Sorrentino,*

---

**2.** In *Thomas* we stated that,

> The burden upon the taxpayer is not to show the correct amount, but rather that " * * * the determination of ... the Board is without any

substantial support in that record." *Thomas v. Commissioner*, 232 F.2d at 525 (quoting *Autosales v. Commissioner*, 43 F.2d 931, 937 (2d Cir.1930)).

726 F.2d 876, 881 (1st Cir.1984). We find no clear error.[3]

■ Second, in reviewing the application of the net worth method, this court has stated:

[t]he Government makes out a prima facie case under the net worth method of proof if it establishes the [taxpayer's] opening net worth (computed as assets at a cost basis less liabilities) with reasonable certainty and then shows increases in his net worth for each year in question which, added to his nondeductible expenditures and excluding his known nontaxable receipts for the year, exceed his reported taxable income by a substantial amount.

*United States v. Sorrentino,* 726 F.2d at 879; *see also Holland v. United States,* 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150 (1954); *McGarry v. United States,* 388 F.2d 862, 864 (1st Cir.1967). The net worth increase creates an inference of taxable income, if the government is able to show a likely source of unreported income or negates all possible nontaxable sources. *See United States v. Massei,* 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958). We agree with the Tax Court's holding that the Commissioner established a *prima facie* case and that taxpayers failed to negate the inference established by the net worth method.

### 1. *Cash Hoard*

■ Appellants claim that the Commissioner and the Tax Court failed to note that they had received a substantial amount of cash from loans, gifts and other receipts of money. Appellants argue that the correct sum of cash on hand and undeposited in banks as of December 31, 1976, amounted to at least $200,000, rather than the $23,-629.53 determined by the Commissioner.

The Tax Court was not persuaded that the Manzolis saved or obtained cash from the sources identified by appellants, and found that the evidence presented by the Manzolis did not support their assertion. We agree with the Tax Court's findings.

The record is devoid of documentary evidence with regard to the alleged loans, gifts or receipts of money. As to the amount of the loans, particularly those made by Mrs. Manzoli's father, Mr. Spinale, the Tax Court found a series of inconsistencies.[4] The Tax Court further found that even assuming that appellants had accumulated cash for the purpose of the construction of their home, as they alleged, by the time of completion of said project, the cash on hand would have been substantially depleted. Finally, the Tax Court concluded that the Manzolis' borrowing of money more clearly indicates the absence rather than the presence of a large accumulation of cash. *See Davis v. Commissioner,* 239 F.2d 187, 190 (7th Cir.1956), *cert. denied,* 353 U.S. 984, 77 S.Ct. 1284, 1 L.Ed.2d 1143 (1957); *Thomas v. Commissioner,* 223 F.2d 83, 88 (6th Cir.1955).

The findings as to the cash hoard are findings of fact which may not be reversed unless clearly erroneous. *United States v. Sorrentino,* 726 F.2d at 881. The record shows little or no evidence to support appellants' assertions, thus the Tax Court had to base its decision on appellants' testimony. That being the case, the Tax Court was entitled to evaluate what weight should be given to that testimony and to consider the credibility of the witnesses. Because due regard should be given to the opportunity of the trial court to judge the credibility of witnesses, we must defer to its judgment. *Anderson v. Bessemer City,* 470 U.S. at 575, 105 S.Ct. at 1512; *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct.

---

**3.** The evidence shows that, the Tax Court did not accept the Commissioner's determinations blindly. The Tax Court even went as far as to alter some of the Commissioner's findings. It found the Commissioner erred in his net worth computation with respect to two figures: $65,-381.67 from the brokerage account in the name of James Spinale (Mrs. Manzoli's father) and $5,834 of expenses claimed for electrical and tile work for the massage parlors. The Tax

Court allowed these figures to be deducted in favor of appellants.

**4.** Mr. Spinale first denied ever having loaned money to taxpayers (I-App. 18; II-A. 383), and later testified that he recalled loaning them money for the purchase of the land on which they eventually built their residence.

457, 469, 86 L.Ed. 680 (1942); *Scallen v. Commissioner*, 877 F.2d 1364 (8th Cir. 1989). Absent clear error, we uphold the Tax Court's conclusion.

## II. TAX FRAUD PENALTIES

■ Mr. Manzoli pled guilty to attempted tax evasion for the year 1978 under 26 U.S.C. § 7201, and the Commissioner asserted a civil fraud penalty for that year under 26 U.S.C. § 6653(b). The Tax Court, although finding that the evidence only supported a conclusion of suspicion of fraudulent intent and not fraudulent intent itself, applied the established principle that conviction under section 7201 collaterally . estops a taxpayer from denying fraud for purposes of a section 6653(b) civil tax penalty. *Allen v. McCurry*, 449 U.S. 90, 95 n. 6, 101 S.Ct. 411, 415 n. 6, 66 L.Ed.2d 308 (1980); *Fontneau v. United States*, 654 F.2d 8, 10 (1st Cir.1981).

The Manzolis challenge this application for the first time on appeal, and ask that this court modify the rule set forth in *Fontneau* because of an alleged change in the legal atmosphere.[5] Appellants allege that the increase of the percentage of the portion of the underpayment attributable to fraud, from 50% to 75%,[6] was designed to target the fraud penalty to fraudulent behavior. 26 U.S.C. § 6653(b)(1) & (2). They submit that the change in the percentages to be paid demonstrates a legislative intent to allow taxpayers an opportunity to rebut the presumption that the entire underpayment was due to fraud. Appellants allege that their argument is reinforced by the fact that the Tax Court did not find fraudulent intent. We disagree.

■ First, this argument is not properly before us on appeal. It is well settled law that an argument not presented to the trial court cannot be raised for the first time on

appeal. *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979).

Second, although this court may disregard this waiver rule in the interest of justice, we fail to find any compelling reason to do so. On appeal, taxpayers failed to provide any relevant legislative history supporting their claim, and we find that the Tax Court properly stated that Mr. Manzoli was collaterally estopped. It is well established that "[t]he constituent elements of criminal tax evasion and of civil tax fraud are identical," *Hicks v. Commissioner*, 470 F.2d 87 (1st Cir.1972), and that "a guilty plea is as much a conviction as a jury trial." *Gray v. Commissioner*, 708 F.2d 243, 246 (6th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984).

Furthermore, in relation to the fraud issue, the Tax Court concluded that although it had not found intent to defraud,

> [it did] not intend by this opinion to vindicate petitioners. Their testimony at trial was unpersuasive, although not demonstrably false. Their destruction of records, certain inconsistent statements, and the various items of underreporting are troublesome and suspicious. Most of their arguments are totally unsupported by the evidence.

Thus we find the Tax Court examined the fraud claim and demonstrated no intent to affect the Commissioner's determination or the guilty plea. Moreover, section 6653(b)(1) and (2) clearly state that if any portion of the underpayment is attributable to fraud, the entire amount is considered fraudulent, unless clearly rebutted by the taxpayer. The Tax Court found not only that the taxpayer was estopped from rebutting, but that even in the absence of estoppel, it would have been unable to do so. We see no reason to disturb the Tax Court's conclusion.

---

5. *General Explanation of the Tax Reform Act of 1986*, Joint Committee on Taxation, 1273–1276 (1987); Senate Finance Committee Report No. 99–313 on P.L. 94–514, Act. Sec. 1503 (May 29, 1986).

6. After the change Section 6653(b)(1) reads in pertinent parts:
 (b) Fraud.

(1) In general.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to *75 percent* of the portion of the underpayment which is attributable to fraud. (emphasis added).
Prior to this change, the percentage of the amount to be paid was *50 percent.*

### III. MOTION FOR CONTINUANCE

■ The Manzolis, in view of the alleged importance of Mrs. Manzoli's testimony, moved for continuance based on her illness.[7] Appellants argue on appeal that the Tax Court's failure to grant their motion constituted an abuse of discretion. *See Lathan v. Crofters, Inc.*, 492 F.2d 913 (4th Cir.1974); *Davis v. Operation Amigo, Inc.*, 378 F.2d 101, 103 (10th Cir.1967).

Upon review of the record, we find that the Tax Court properly determined that the motion filed below appeared to request an indefinite continuance, because it presented no objective evidence of Mrs. Manzoli's illness, gave no indication as to when she might have ultimately been able to assist in preparing for trial or when her health problems would be resolved. The record further demonstrates that during the proceedings the Tax Court allowed taxpayers' counsel to use leading questions, and when reaching its conclusions, gave due regard to her condition and the fact that she was not involved in the day-to-day business efforts.

Accordingly, given the Tax Court's general policy against postponing trials once a case has been set on calendar, the fact that the case was at least ten years old, and that this court has established that trial courts have broad discretion on matters of continuance, *Tuitt v. Fair*, 822 F.2d 166, 172 (1st Cir.1987), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1988), we find that the Tax Court did not act unreasonably in refusing to postpone the trial indefinitely.

### IV. MOTION FOR LEAVE TO AMEND COMPLAINT TO RAISE THE ISSUE OF THE STATUTE OF LIMITATIONS

■ On November 23, 1988, more than a year after the trial, the Manzolis filed a motion for leave to amend their petition, and proposed an amendment attempting to raise, for the first time, the defense of the statute of limitation for the years 1977 and 1978. The Tax Court initially denied this motion as untimely, but granted reconsideration after a hearing was requested by the Manzolis. Thereafter, the Tax Court held that the statute of limitations was a new issue in the case, that it had not been properly pleaded and thus should be excluded as an issue.

On appeal, appellants' primary argument is based again upon the Tax Court's finding that there was insufficient evidence for a determination of fraud. Therefore, they aver that even if Mr. Manzoli was estopped from denying fraud and thus from raising the limitations defense[8], Mrs. Manzoli, who was not estopped from denying fraud, could in fact raise the defense. They further submit that the Commissioner's case would not have been prejudiced since the fraud issue was litigated and the evidence presented by it was found not sufficient to determine fraud. We find both these arguments meritless.

In denying said motion the Tax Court properly took into consideration various factors. First, it found the issue had not been raised by either one of the Manzolis, that the motion was untimely, and that no proper excuse was provided for its tardiness. Second, it stated that the amendment would have in fact prejudiced the Commissioner. It found that if the statute of limitations had been an issue, it would have increased the desirability of settlement on the Commissioner's part. Moreover, it held that because the Commissioner relied on the collateral estoppel doctrine it was not on notice of the continued necessity of establishing fraud against at least

---

7. In December 1976, as the construction of their house was coming to an end, the Manzolis discovered that Mrs. Manzoli had cancer. She received sick leave during 1977 and thereafter resigned from her teaching post. She underwent surgery in December 1977 and received psychiatric treatment as a result of her condition. She also received chemotherapy and radiation treatments in 1978 and 1979. This information, however, was not included in the motion.

8. Proof of Mr. Manzoli's fraud, or his guilty plea, used as an evidentiary admission of fraud, aside from its consequences as an estoppel, suspends the statute of limitations. *See Ballard v. Commissioner*, 740 F.2d 659, 663 (8th Cir.1984).

one of the Manzolis. *See Hicks v. Commissioner,* 470 F.2d 87.

The Tax Court also took into consideration the fact that if the amendment had been allowed, the court would have been required to conduct a further trial and reconsider a new record. And, finally, pursuant to the Tax Court Rules, it also assessed the requirements of justice. Rule 41(a) T.C.R.; *see also Given v. Commissioner,* 238 F.2d 579, 583 (8th Cir.1956). To this effect, it reiterated that although fraud was not determined, it was not persuaded that in the final analysis justice would be served by allowing the proposed amendment.

 Clearly, leave to amend a pleading is a matter within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Isaac v. Harvard University,* 769 F.2d 817, 829 (1st Cir.1985). A denial of a leave to amend will be overturned only for an abuse of that discretion. *Isaac v. Harvard University,* 769 F.2d at 829; *Johnston v. Holiday Inns, Inc.,* 595 F.2d at 896. Furthermore, an untimely amendment request should be denied where, as in the instant case, the Tax Court demonstrated that no excuse for delay existed and that the adverse party would suffer prejudice or substantial inconvenience. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Quaker State Oil v. Garrity Oil,* 884 F.2d 1510, 1517 (1st Cir.1989); *Barrett v. Foster Grant Co.,* 450 F.2d 1146, 1149 (1st Cir. 1971). Accordingly, we find that the Tax Court did not abuse its discretion. *Barrett v. Foster Grant Co.,* 450 F.2d at 1149.

## V. REQUEST FOR PAYROLL EXPENSE ADJUSTMENT AND NONTAXABLE EXPENSE

Finally, appellants, in a last effort to save a sinking ship, argue that the Tax Court erred in not requiring an adjustment for some payroll expenses and in not allowing an expense deduction. They argue that they could make an adjustment for $30,000 of payroll expenses omitted from Lion Enterprises's 1978 tax return. Taxpayers bear the burden of proving entitlement to any claimed deductions. *Deputy v. Dupont,* 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940). The payroll expense adjustment at issue, however, was not included in the detailed stipulation of facts prepared to limit the issues in dispute. Hence, not only was it not proven by taxpayer, but it was not properly raised below. We decline to address this issue for the first time on appeal.

Expense deductions were determined and examined by the Commissioner by means of the "net worth" analysis. Appellants argue that the Tax Court erred in not declaring $4,700 paid to a furniture store as a deductible expense. The Tax Court determined, and we have agreed on appeal, that the taxpayers were not able to show any errors related to this or any other amount included in the Commissioner's net worth analysis. We need go no further.

## CONCLUSION

On appeal, our review is limited. After careful assessment of the arguments presented in light of the applicable standards and precedent, we agree with the Tax Court. Its conclusions are hereby affirmed.

*Affirmed.*