ROBERT E. FELDMANN AND IRENE J. FELDMANN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Feldmann v. Commissioner
Docket No. 23365-87
United States Tax Court
T.C. Memo 1991-353; 1991 Tax Ct. Memo LEXIS 402; 62 T.C.M. (CCH) 288; T.C.M. (RIA) 91353; July 31, 1991, Filed *402 Decision will be entered for the respondent. Henry D. Nunez, for the petitioners. Steven A. Wilson, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION By notice of deficiency dated June 11, 1987, respondent determined the following additions to petitioners' Federal income tax: Additions to Tax
Year
Sec.6653(a) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6659
1979
$ 342.27
n/a
n/a
$ 2,053.60
1980
136.76
n/a
n/a
820.54
1981
n/a
$ 227.46
*
1,364.78
1982
n/a
219.30
*
1,315.80
The issues for decision are: (1) Whether petitioners are liable for the addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a), (a)(1), and (a)(2); (2) whether petitioners are liable for *403 a valuation overstatement addition to tax under section 6659; (3) whether respondent's failure to publish Treasury Delegation Order 150-10 invalidates the determination of additions to tax; (4) whether respondent is estopped from determining additions to tax by the issuance of a pre-filing notification letter; (5) whether petitioners asserted positions which are frivolous and groundless and are therefore liable for a penalty under section 6673. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. The facts of the instant case are largely identical to those of Wolf v. Commissioner, T.C. Memo 1991-212, with respect to the terms of the Encore master recording leasing program, and such facts are incorporated herein by this reference. Petitioners resided in Fresno, California, when they filed their petition in this case. Petitioner (all references to petitioner are to Robert E. Feldmann) has a degree in business administration. He is a real estate broker, selling primarily commercial real estate, and is familiar with negotiating contracts and the use of appraisals. *404 Petitioner is an amateur musician with experience in hiring bands for music festivals. However, petitioner has no experience in the music recording industry. In 1982, petitioner learned of the Encore master recording leasing program (Encore or the program) through his accountant, Tony Labendeira. Labendeira provided petitioner with Encore promotional materials, including a tax opinion prepared by Henry Nunez, an attorney and accountant. Labendeira informed petitioner that he had researched the tax laws and that the tax benefits claimed by Encore were available for the trade or business of marketing master recordings. Petitioner was unaware that Labendeira, who had no experience in the music industry, received commissions from Encore based on a percentage of the amount his clients invested. Prior to investing, petitioner discussed the Encore program with Dan Ozier, a salesman employed by Encore, and with Clint Collings, the president of Encore. Ozier and Collings had no experience in the music recording industry prior to Encore's commencement of business in 1981. Petitioner did not conduct any independent investigation of Encore or its principals in order to determine their *405 experience and previous success in promoting master recordings, and was unaware of their inexperience. Petitioner relied entirely on the description of the program provided by Labendeira, Ozier, and Collings. During 1982, petitioner invested in the Sunshine Records partnership (Sunshine), which was organized by Encore as a vehicle for investors to participate in the program. Prior to investing, petitioner was unaware of the identity of the other 12 partners. On December 16, 1982, Sunshine entered into a lease with Encore for a Mac Davis master recording (the master). The advance rental payment made by Sunshine for the master was $ 66,000. Neither the terms of the lease, nor the amount of the advance rental payment, were negotiable. The lease does not identify or refer to song titles. Petitioner had no information regarding the particular master in which he was investing, including song titles, prior to his investment. He did not know when the songs on the master were recorded, nor whether they had been previously released. He did not know where the master was produced, nor the cost of production. He did not see or hear the master prior to investing. Petitioner did not *406 seek any opinions regarding the value or marketability of the master prior to investing. He neither sought nor received any profit projections regarding the program. The only appraisal reports available to petitioner were prepared by Don Tweedy and Brad McCuen. The reports are addressed to Encore and dated December 16, 1982, and December 19, 1982. The appraisal reports were too general and conclusory to provide any guidance as to the fair market value of the master or the probable profitability of the Encore program. See Wolf v. Commissioner, supra.Petitioner did not review the appraisal reports prior to investing in Sunshine. The master was of song demo quality, not suitable for general commercial release, with the possible exception of two songs. The material and the production quality of the master are dated and not up to minimal professional standards. Petitioner did nothing to verify that Encore had title to the master prior to investing, and failed to investigate the chain of title. The chain of title to the master is: Date
Price
Seller
Buyer
07/12/82
$  unknown
Jerry C. Wilson
El Dorado, Inc.
12/02/82
4,125
El Dorado, Inc.
AJK Enterprises
12/16/82
1,200,000
AJK Enterprises
Encore
12/16/82
66,000
Encore (lessor)
Sunshine (lessee)
*407 Encore's consideration to AJK Enterprises for the master consisted of $ 19,583.33 in cash and a promissory note for $ 1,180,416.60. For 1982 through 1987, Sunshine reported the following income and expenses: Date
Gross Receipts
Rent
Misc. Expenses
1982
-0- -0- $ 56,571.00
1983
-0- -0- 1,324.75
1984
$ 35.00 $ 5.64 383.50
1985
-0- -0- 100.00
1986
-0- -0- 27.03
1987
-0- -0- -0-
As of the trial of the instant case, petitioner did not know how many Mac Davis albums Sunshine had sold, nor the retail price at which Sunshine attempted to sell the albums. On December 16, 1982, Encore and Sunshine executed a form titled "Election To Pass Investment Tax Credit From Lessor To Lessee." The form specifies that on December 16, 1982, possession of the master was transferred to Sunshine. Through the form, Encore, as lessor, elected pursuant to section 48(d)(1) to treat Sunshine, as lessee, as having purchased the master. Petitioners reported total gross income of $ 34,812 on their 1982 Federal income tax return. After deductions and credits attributable to their investment in Sunshine, petitioners' reported tax liability for 1982 was $ 498. Petitioners *408 claimed tax benefits from Sunshine in 1982 in the amount of $ 8,011 for claimed business expense deductions and $ 17,020.80 for claimed investment credit. In addition, petitioners claimed refunds for 1979 of $ 6,845.32, for 1980 of $ 2,735.13, and for 1981 of $ 4,549.28 attributable to the carrying back of excess losses and investment credit. Their total investment in Sunshine was $ 10,000. On March 19, 1986, a Notice of Final Partnership Administrative Adjustment (FPAA) for taxable year 1982 was mailed to petitioner as tax matters partner for Sunshine. Also on March 19, 1986, the FPAA for taxable year 1982 was mailed to petitioners as partners of Sunshine. Through the FPAA for taxable year 1982 respondent disallowed, with respect to petitioners, claimed deductions and investment credit in the amount of $ 56,571 and reduced the adjusted basis of the master to zero. The grounds expressed in the FPAA for the determination were that Sunshine's activities did not constitute a trade or business, were not entered into for profit, and lacked economic substance. Neither petitioner, as tax matters partner, nor any other partner, filed a petition for judicial review of the FPAA. OPINION
*409 Additions To Tax Under Section 6653(a), (a)(1), and (a)(2)
Section 6653(a) and, for taxes the last date prescribed for payment of which is after December 31, 1981, section 6653(a)(1), provide for an addition to tax equal to 5 percent of any underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations, and section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules and regulations. Negligence under section 6653(a), (a)(1), and (a)(2) is the lack of due care or the failure to act as a reasonable person would act under the same circumstances where there is a legal duty to act. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proving that no part of the underpayments for the years at issue is due to negligence or intentional disregard of rules and regulations. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). While petitioner claims to have engaged in the commercial development *410 of the master, he had no experience in the music recording industry and devoted little time or attention to the venture. He did not seek independent advice about the economic merit of leasing the master. Petitioner did not listen to the master prior to leasing it nor did he seek independent appraisals, even though the Encore prospectus informed him that the basis of the master for purposes of the investment credit was dependent on its value. He did not inquire as to the date and the circumstances under which the master was recorded. He did not inquire into the experience of Collings, Encore's president, in the music industry. He did not inquire about past successes or failures in the Encore program. Petitioner asserts that he acted in a reasonable manner and exercised ordinary business care and prudence. We disagree. Petitioner's actions do not approach the actions which a reasonable and ordinarily prudent person would have taken under the circumstances. Petitioner, through his interest in Sunshine, was purportedly engaged in the trade or business of marketing the master. Such an activity requires a degree of participation and investigation higher than that which petitioner *411 took. Petitioner also argues that he reasonably and in good faith relied on the advice of his tax advisor, Labendeira, and thus exercised reasonable care pursuant to United States v. Boyle, 469 U.S. 241, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985). Respondent agrees that good faith reliance on professional advice concerning tax laws may establish reasonable care. United States v. Boyle, supra; Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986). However, "Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered." Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 101 (5th Cir. 1990), affd. U.S. (June 27, 1991). Though petitioner determined that, under the proper circumstances, the leasing and marketing of a master recording would qualify for the investment credit and for the deduction of losses, petitioner did little to ensure that those circumstances were present in the instant case. See McCrary v. Commissioner, 92 T.C. 827, 849 (1989). First, the tax opinion prepared by Nunez and included as part of *412 the prospectus warned that the availability of the investment credit and deductions for losses was dependent on: (1) The partnership qualifying as a trade or business, and (2) an accurate valuation of the master. However, petitioner's testimony establishes that he conducted none of the investigation and analysis that is associated with the commencement of a business. In addition, petitioner did nothing to ensure that the valuation of the master was accurate. He failed to request or review any appraisals prior to his investment, and the only appraisals he reviewed after his investment are patently inadequate. With respect to the assistance and advice provided by Labendeira, petitioner was negligent in not demanding more information prior to investing. Labendeira offered tax advice of a general nature which did little to inform petitioner of the tax consequences of the specific transaction which petitioner was contemplating. With regard to economic analysis, Labendeira simply calculated a break-even point using assumed figures. Petitioner failed to exercise reasonable care in not demanding a more sophisticated analysis based on realistic, probable sales figures. In addition, *413 Labendeira did nothing to ensure that the conditions provided in Nunez's tax opinion were present. In conclusion, all of the underpayments for the years at issue were due to negligence or intentional disregard of the rules and regulations. Respondent's determination regarding the addition to tax under section 6653(a), (a)(1), and (a)(2) is therefore sustained. Addition To Tax For Valuation Overstatement Under Section 6659
Section 6659(c) defines "valuation overstatement" to include the claim on a return of a value of 150 percent or more of the correct value. The amount of the addition equals the applicable percentage, as determined under section 6659(b), of the underpayment so attributable. Sec. 6659(a). In the instant case, the value claimed is more than 250 percent of the correct value, as determined at the partnership level by respondent through his FPAA, and therefore the applicable percentage is 30 percent. See Maxwell v. Commissioner, 87 T.C. 783 (1986). However, petitioner contends that the section 6659 addition to tax is inapplicable because the master was not "placed in service," as required by section 46(c)(1), until March of 1983, the date *414 that records were first produced from the master, thus disqualifying the master for the investment credit, and that, therefore, the rationale set forth in Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988), precludes liability for the addition to tax under section 6659. See also McCrary v. Commissioner, supra; Gainer v. Commissioner, T.C. Memo 1988-416, affd. 893 F.2d 225 (9th Cir. 1990). Petitioner argues that the underpayment in the instant case is attributable to the failure of the master to be placed in service to qualify for the investment credit under section 46(c)(1), not to a valuation overstatement, and that therefore section 6659 is inapplicable. However, the "Election To Pass Investment Tax Credit From Lessor To Lessee" executed by Encore and Sunshine establishes that the master was placed in service in 1982. Section 1.46-3(d)(3), Income Tax Regs., provides that: property with respect to which an election is made under section 1.48-4 to treat the lessee as having purchased such property shall be considered placed in service by the lessor in *415 the taxable year in which possession is transferred to such lessee.
Thus, the master was placed in service in 1982, the taxable year in which possession was transferred to Sunshine. We reject petitioner's contention that the master was not placed in service until March of 1983, and that its failure to qualify for the investment credit is attributable to the failure to place it in service as required by section 46(c)(1). Because the failure of the master to qualify for the investment credit is not attributable to section 46(c)(1), we need not consider whether Todd v. Commissioner, supra, is applicable to the instant case. Because the value claimed on petitioners' Federal income tax return in each of the years in issue exceeds the correct value determined in each such year by more than 150 percent, and because the underpayment attributable to the valuation overstatement is at least $ 1,000 in taxable years 1979, 1980, 1981, and 1982, we sustain respondent's determination of the addition to tax under section 6659. Respondent's Failure To Publish Treasury Delegation Orders 150-10 Does Not Invalidate The Assessment Of Additions To Tax By Respondent
*416 Petitioner contends that respondent was granted authority to issue notices of deficiency pursuant to Treasury Delegation Order (TDO) 150-10, 51 Fed. Reg. 25284 (July 11, 1986), effective October 1, 1986. TDO 150-10 provides a complete list of Internal Revenue Districts. TDO 150-10 was not published in the Federal Register in accordance with section 5 of the Federal Register Act of section 3 of the Administrative Procedure Act. Therefore, petitioner argues, the Secretary of the Treasury did not properly delegate to respondent authority to send statutory notices of deficiency. This Court has rejected petitioner's argument in Stamos v. Commissioner, 95 T.C. 624 (1990). In that opinion we held that TDO 150-10 need not be published in the Federal Register to be effective, and therefore, the Secretary duly delegated to respondent authority to issue statutory notices of deficiency. Based on our holding in Stamos v. Commissioner, supra, we reject petitioner's argument. Respondent Is Not Estopped By The Issuance Of A Pre-Filing Notification Letter From Subsequently Determining Additions To Tax
Petitioner contends that *417 respondent is estopped from determining additions to tax because: (1) He mailed a pre-filing notification letter and thereafter discouraged petitioners from amending their Federal income tax returns for the years at issue; and (2) respondent's revenue agent advised petitioners that additions to tax would still be determined if the returns were amended. We find this contention completely without merit. Petitioner has failed to establish any legal or factual basis for the estoppel he claims. There is no evidence petitioners received a pre-filing notification letter. There is no evidence that respondent made any representations to petitioners. Respondent does not dispute that his revenue agent informed petitioner's accountant that even if petitioners filed amended returns, additions to tax would still be determined. There is nothing irregular or misleading about such a statement. Because petitioner has failed to present a legal or factual basis for his argument, we need not discuss the elements of the doctrine of equitable estoppel. Penalty Pursuant To Section 6673
Section 6673 provides that whenever it appears that proceedings before this Court have been instituted or *418 maintained by the taxpayer primarily for delay, that the taxpayer's position in such proceedings is frivolous or groundless, or that the taxpayer unreasonably failed to pursue available administrative remedies, damages in an amount not in excess of $ 5,000 shall be awarded to the United States. As to positions taken after December 31, 1989, in proceedings which are pending on or commenced after such date, this Court may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7731(a), 103 Stat. 2106, 2400. Shortly before trial, petitioner conceded that he was not entitled to the investment credit which he claimed on his Federal income tax return. In addition, petitioner accepted respondent's valuation of the master. However, a taxpayer cannot avoid sanctions under section 6673 merely because he has conceded an issue which he would certainly have lost where there remain issues which are frivolous or groundless. In addition, because the FPAA issued by respondent conclusively determined that the partnership was not entitled to investment credit (a partnership item), and that Sunshine's *419 basis in the master is zero, petitioner has actually conceded nothing. See Maxwell v. Commissioner, supra.Therefore we place no weight on petitioner's concessions regarding the investment credit. Petitioner also conceded subsequent to trial that the master was not placed in service until taxable year 1983. This "concession" is an attempt to avoid liability for the addition to tax under section 6659 pursuant to the principles established in Todd v. Commissioner, supra.See McCrary v. Commissioner, supra at 864. The documentation associated with the lease and the appropriate income tax regulation establish that the master was placed in service in 1982. Petitioner's concession and his attempt to analogize the instant case to Todd v. Commissioner, supra, is a frivolous and groundless argument which is counter to undisputed evidence of which petitioner cannot have been unaware. In addition to the addition to tax for a valuation overstatement, at issue in this case is the addition to tax under section 6653(a), (a)(1), and (a)(2). Many cases in this Court, almost identical to the instant *420 case, have held the taxpayer liable for such additions. See McCrary v. Commissioner, supra; Avers v. Commissioner, T.C. Memo 1988-176. Petitioner has been unable to distinguish such cases, or to find any statutory support for his position. Petitioner was unentitled to the deductions and credits claimed, and was negligent in claiming said deductions and credits. Petitioner's arguments regarding negligence and intentional disregard for the rules and regulations are groundless. We find petitioner's argument regarding the filing of a pre-notification letter particularly frivolous. Petitioner failed to present a cogent legal or factual basis for this argument, which suggests to the Court that petitioner has advanced as many arguments in the instant case as possible, without any concern for their validity or relevance. Petitioner's arguments have complicated and delayed what is essentially the issue of liability for additions to tax, an issue which has been frequently decided against the taxpayer in similar cases. Petitioner's conduct throughout the instant case is typical of the tactics which section 6673 is intended to deter. Finally, *421 in two District Court cases, John D. Weft, et al. v. Commissioner, docket No. CVF-87-013-EDP (E.D. Cal.), and Vielbig, et al. v. Commissioner, docket No. CVF-86-363-MDC (E.D. Cal.), which involved similar Encore partnerships, the District Court held that the taxpayers had entered into the transactions without a profit objective and accordingly disallowed all of the partnerships' claimed deductions. Petitioner's counsel litigated the Werft case and was provided a copy of the Vielbig case by respondent prior to trial. See Sydnes v. Commissioner, 74 T.C. 864, 872 (1980), affd. 647 F.2d 813 (8th Cir. 1981). We have warned similarly situated taxpayers that penalties were likely to be required in an appropriate case. Looney v. Commissioner, T.C. Memo 1988-332. Petitioner has advanced frivolous and groundless arguments in which he has persisted without reason. Pursuant to section 6673, petitioners are required to pay a penalty in the amount of $ 1,000 to the United States. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on the deficiency. ↩